46 A.3d 693

**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**David L. BRADFORD, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 2011.

Decided May 30, 2012.

124

---

Michael Wayne Streily, Allegheny County District Attorney's Office, Pittsburgh, for Commonwealth of Pennsylvania.

Kevin Abramovitz, Matthew Debbis, for David L. Bradford.

Carrie Lynn Allman, Brandon Paul Ging, Allegheny County Public Defender's Office, for Appellee Amicus Curiae, Allegheny County Public Defender's Office.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, JJ.

## *OPINION*

Justice BAER.

We granted review in this case to determine whether the courts below erred in dismissing criminal charges against Defendant–Appellee David Bradford. The trial court discontinued the case because the Commonwealth failed to bring Defendant to trial within the time required by Pennsylvania's speedy trial rule, Pa.R.Crim.P. 600, when the Magisterial District Judge failed to forward timely the relevant file as required by Pa.R.Crim.P. 547(B). Upon review, we determine that dismissal was not appropriate under Rule 600 when the Commonwealth acted with due diligence in relying upon the judicial system to transfer documents in accordance with the Rules of Criminal Procedure. Accordingly, we reverse the dismissal of charges and remand to the trial court.

On September 24, 2008, Wilkinsburg Police filed a criminal complaint against Defendant in connection with a September 21, 2008, abduction, kidnapping, and rape of a woman in Wilkinsburg. Defendant was arrested the next day, charged with kidnapping, rape, involuntary deviate sexual intercourse, and terroristic threats. The following day, Defendant was arraigned and bail was set at $100,000. When Defendant could not make bail, he was incarcerated in the Allegheny County Jail.

On October 9, 2008, a Magisterial District Judge presided over Defendant's Preliminary Hearing. An assistant district attorney represented the Commonwealth during the hearing and sought amendment of the charges to add one count each of sexual assault, aggravated indecent assault, and indecent assault. The District Judge held all charges over for court and signed a recommitment order with bail maintained at $100,000. The District Judge also issued Defendant a subpoena for formal arraignment on December 12, 2008.

For reasons unknown, the District Judge failed to comply with Pa.R.Crim.P. 547(B) which requires the District Judge to forward the preliminary hearing transcript to the Department of Court Records of the Court of Common Pleas within five days after holding the defendant for court.[1] Although the record indicates that the District Judge's office printed and allegedly mailed the docket transcript on April 20, 2009, it does not appear that the Department of Court Records received the package. Accordingly, the case was not entered into the Department's docketing system. The docketing system is designed to generate a "CR Number," which is then automatically transmitted to the District Attorney's office, launching that office's docketing system that tracks cases for Rule 600 purposes. As a CR Number was not generated in this case, the District Attorney's office's tracking system was not triggered. Instead, following the preliminary hearing, Defendant returned to the Allegheny County jail where he remained with no further proceedings until October 9, 2009. On that date, Defendant filed a counseled motion to dismiss charges pursuant to Rule 600, which provides for the dismissal of charges when a defendant's trial has not commenced within 365 days of the filing of the criminal complaint subject to certain exclusions and extensions.[2] Counsel filed the motion

1. Pa.R.Crim.P. 547, Return of Transcript and Original Papers, provides in relevant part:

> (A) When a defendant is held for court, the issuing authority shall prepare a transcript of the proceedings. The transcript shall contain all the information required by these rules to be recorded on the transcript. It shall be signed by the issuing authority, and have affixed to it the issuing authority's seal of office.
> (B) The issuing authority shall transmit the transcript to the clerk of the proper court within 5 days after holding the defendant for court.

Pa.R.Crim.P. 547 (A, B).

2. In relevant part, Rule 600 provides:

> (A) ... (2) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is incarcerated on that case, shall commence no later than 180 days from the date on which the complaint is filed.
> (3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall com-

to dismiss at a miscellaneous docket number because no CR Number had been assigned to the case by the Department of Court Records.

Upon receipt of notice of the motion to dismiss on October 13, 2009, the District Attorney's office realized that the case had not been entered into its internal docketing system or the Court of Common Pleas's docketing system. The District Attorney's office contacted the Magisterial District Office, which immediately sent the documents by facsimile to the Department of Court Records. When the Department entered the information into the docketing system and generated a "CR number," the CR number was then electronically transmitted to the District Attorney's computer docketing system on October 15, 2009. The District Attorney filed a criminal information on the same day. A pre-trial conference was scheduled for October 23, 2009, and trial was set for the first available date of December 7, 2009. The trial would have commenced seventy-three days after the 365th day following the filing of the complaint.

On November 4, 2009, the trial court entered an order granting Defendant's motion dismissing charges. In its order, the trial court concluded that the District Attorney's office had

> mence no later than 365 days from the date on which the complaint is filed.
>
> \*    \*    \*
>
> ((G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.
> If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain. If, on any successive listing of the case, the Commonwealth is not prepared to proceed to trial on the date fixed, the court shall determine whether the Commonwealth exercised due diligence in attempting to be prepared to proceed to trial. If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.
> Pa.R.Crim.P. 600.

notice of the charges against Defendant, given that an assistant district attorney was present at the preliminary hearing. The court further concluded that the District Attorney's office did not exercise due diligence in bringing the case to trial: "The Court finds there was no diligence exercised in light of the serious nature of the charges. The only system in place [for Rule 600 compliance] is that of reliance upon the clerks of the District Magistrate Court and the Department of Court Records." Tr. Ct. Order of November 5, 2009 at 4.

On November 5, 2009, the Commonwealth filed a notice of appeal to the Superior Court. On December 29, 2009, the trial court filed a comprehensive opinion reviewing the case law surrounding Pennsylvania's speedy trial jurisprudence and supporting its dismissal of the charges. The court recognized that the Commonwealth alleged that it acted with due diligence in relying upon the District Judge's compliance with Pa.R.Crim.P. 547(B), which would have triggered the Commonwealth's internal docketing system for Rule 600 compliance, and thus, that the failure to prosecute the case within the statutory timeframe was attributable to judicial delay rather than its own lack of diligence.

While the court acknowledged that the Commonwealth could not control the clerical error of the District Judge or the failure of the postal system to deliver the documents to the Department of Court Records, it "could control the possible effect of a clerical or administrative error and prevent any threat to its obligation to commence the trial as required by Rule 600 by instituting a system to track cases prosecuted at Preliminary Hearings by Assistant District Attorneys which are held for court." Tr. Ct. Op. at 16. The trial court concluded that the Commonwealth did not exercise "due diligence when it use[d] the receipt of the paperwork from the District Judge as a 'trigger' when the obligation to bring the Defendant to trial under Rule 600 commences with the filing of the complaint." Tr. Ct. Op. at 31.

In a divided three-judge decision, the Superior Court affirmed the trial court's decision to dismiss the charges based upon the Rule 600 violation. The majority opinion recognized

that the key issue in the case is whether the Commonwealth acted with due diligence, pursuant to Rule 600(G), when it relied upon the District Justice's compliance with the Rules of Criminal Procedure. Rule 600(G) provides, "If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain." The court further recognized while "due diligence does not demand perfection, it does require the Commonwealth to put forth a reasonable effort." *Commonwealth v. Bradford,* 2 A.3d 628, 632 (Pa.Super.2010). Notably, the court observed that this Court in *Commonwealth v. Browne,* 526 Pa. 83, 584 A.2d 902, 906 (1990), discussed in detail below, determined that due diligence requires the Commonwealth to employ a record keeping system to track cases for Rule 600 purposes.

Applying the law to the case at hand, the Superior Court initially refuted the Commonwealth's suggestion that any of the delay could be attributable to the Defendant for failing to alert the court or the Commonwealth to the delay in the case, finding that such contention was frivolous. The court next concluded that the Commonwealth's system of relying upon the District Judge to forward the case information to the Department of Court Records was not reasonable because the Commonwealth had no control over the District Judge's or the Department of Court Record's compliance. The court opined that when the assistant district attorney left the preliminary hearing due diligence required the Commonwealth to keep a list, diary, or some other sort of record-keeping system to track the case for Rule 600 purposes.

The Superior Court distinguished our decision in *Commonwealth v. Monosky,* 511 Pa. 148, 511 A.2d 1346 (1986), relied upon by the Commonwealth and the dissent. As discussed more fully below, this Court in *Monosky* held that Rule 600 did not require dismissal of charges in a case where, as in this case, the defendant was bound over for court at a preliminary hearing but the magistrate did not forward the file in timely

compliance with the Rules of Criminal Procedure, thus failing to trigger the district attorney's internal Rule 600 tracking system. The Superior Court distinguished the case at bar from *Monosky*, observing that, unlike in *Monosky*, the assistant district attorney was present at the preliminary hearing in the case before us, thus alerting the District Attorney's office to the existence of the case. Indeed, the court noted that in *Monosky* we left open whether the result would be different if the district attorney had been aware of the charges. Accordingly, the majority of the panel affirmed the trial court's order dismissing the charges based upon the expiration of the 365 day period under Rule 600 and the Commonwealth's failure to exercise due diligence.

Judge Bowes filed a lengthy and emphatic dissent. The dissent first questioned whether the delay was beyond the control of the Commonwealth. Relying upon our decision in *Monosky*, the dissent opined that the Rule 600 violation resulted not from the Commonwealth's lack of due diligence but from judicial delay occasioned by the failure of the District Judge to forward the file pursuant to Rule 547(B). The dissent further distinguished the case at bar from *Browne*, 584 A.2d 902. She stated that in *Browne*, we found a lack of due diligence as a result of the district attorney's failure to maintain a record keeping system where, unlike this case, the district attorney had full responsibility in that county over the scheduling of arraignments.[3] The dissent concluded that the case at bar was controlled by *Monosky* rather than *Browne*.

The dissent next tackled the question of whether the Commonwealth acted with due diligence, emphasizing that the mere existence of human error does not negate due diligence. Looking to the facts of the case at bar, the dissent concluded that reliance on a coordinate branch of government to fulfill its

---

**3.** The dissent summarized our decision in *Browne* as concluding that the District Attorney had full responsibility for scheduling the arraignments. *Bradford*, 2 A.3d at 642 (Bowes, J., dissenting). While the defendant alleged the District Attorney's control over the scheduling, this Court avoided that question and instead observed that the District Attorney had responsibility for conducting the arraignments, as discussed more fully *infra*. *Browne*, 584 A.2d at 904 n. 1.

responsibilities pursuant to the Rules of Criminal Procedure did not constitute an absence of due diligence. *Commonwealth v. Bradford*, 2 A.3d at 646 (Bowes, J., dissenting) (relying upon *inter alia Commonwealth v. Lewis*, 287 Pa.Super. 64, 429 A.2d 721 (1981) (holding no Rule 600 violation where delay resulted from the court administrator's failure to recall the defendant's case, over which the Commonwealth had no control); *Commonwealth v. Torres*, 741 A.2d 218 (Pa.Super.1999) (holding that Commonwealth was duly diligent in utilizing the traditional writ system to bring down a defendant for trial, where delay resulted because the mayor's office refused to honor the writ)). The dissent concluded, "In sum, the public is at risk due to Appellee's discharge, the district attorney had a reasonable Rule 600 compliance system in place and was not to any extent attempting to evade Appellee's Rule 600 rights, and the delay at issue was caused by a breakdown in the judicial branch of government." *Id.* at 649.

The Commonwealth appealed to this Court, and we granted review to determine: "[w]hether the Superior Court erred in ruling that the trial court was correct in determining that the Commonwealth did not act with due diligence in bringing respondent to trial." *Commonwealth v. Bradford*, 608 Pa. 424, 12 A.3d 288, 289 (2011) (*per curiam*).

Before this Court, the Commonwealth argues that the courts below erred in dismissing the charges based upon the conclusion that the Commonwealth did not act with due diligence. It asserts that the delay in this case was not the result of the absence of due diligence by the Commonwealth but, instead, due to the failure of the District Judge to comply with the Rules of Criminal Procedure. The Commonwealth maintains that is was reasonable for it to expect that the District Judge would forward the documents in compliance with the rules, thus triggering the internal Rule 600 tracking system, even though the system, like all systems, proved to be imperfect. It avers that it is acceptable for the Commonwealth to utilize the judiciary's system of tracking cases to trigger its own tracking system, rather than duplicating the effort in a county processing 20,000 cases each year.

The Commonwealth relies upon our decision in *Monosky* in which we concluded that the delay resulted not from lack of the Commonwealth's due diligence but instead from judicial delay caused by the district judge failing to forward the transcript. The Commonwealth observes that in *Monosky* we held, "So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime." Commonwealth Brief at 30 (quoting *Monosky*, 511 A.2d at 1348).

The Commonwealth also reviews our decision in *Browne*, where we found due diligence lacking based upon the absence of a record keeping system. The Commonwealth observes that this Court in *Browne* approved the dismissal of charges resulting from a failure to schedule the defendant's arraignment where the district attorney in that county held the power to conduct the arraignments. The Court in *Browne* concluded that the district attorney's failure to maintain a record keeping system constituted a failure to exercise due diligence. The Commonwealth emphasizes that in this case the District Attorney did not have similar authority and that the fault lay with the District Judge's failure to forward the transcript in compliance with the Rules of Criminal Procedure.

The Commonwealth relies heavily on Judge Bowes' dissent, discussed above, concluding that the District Attorney's reliance on the Magisterial District Judge's compliance with the Rules of Criminal Procedure to trigger the District Attorney's internal docketing system for Rule 600 compliance was reasonable. Accordingly, the Commonwealth urges us to reverse the courts below and reinstate the charges.

Defendant counters, asserting that the trial court "properly concluded that the Commonwealth abandoned its burden to comply with Rule 600 by voluntarily relinquishing its burden and leaving compliance in the hands of unknown people that it does not employ or control." Defendant's Brief at 8. He maintains that this system of reliance upon the District Judge is constitutionally flawed. He further argues that due dili-

gence requires that the Commonwealth take steps to ensure compliance with Rule 600 prior to the mechanical run date, and asserts that prior to that date in this case, the Commonwealth did nothing. Defendant contends that our Court in *Browne* declared that due diligence requires the Commonwealth to maintain simple internal recording systems to bring defendants to trial within the confines of Rule 600 and does not allow for outsourcing of the record-keeping process. He asserts that, as in *Browne*, the Commonwealth in this case failed to maintain a simple record-keeping system and thus failed to exercise its due diligence.

Defendant distinguishes this Court's decision in *Monosky*, highlighting that in that case we specifically limited our decision to cases where the Commonwealth was not aware of the charges against the accused. Defendant maintains that the District Attorney's office was fully aware of the existence of this case because an assistant district attorney participated in Defendant's preliminary hearing.

Defendant additionally emphasizes that an appellate court must apply an abuse of discretion standard of review of trial court decisions in Rule 600 cases. Defendant contends that nothing in the record suggests that the trial judge in this case overrode or misapplied the law, that the decision was manifestly unreasonable, or that the decision was the result of partiality, prejudice, bias, or ill-will as is required for a determination that the judge abused his discretion.

Finally, Defendant rejects the portion of Judge Bowes's dissent where she opines that she does "not believe that an imperfect system necessarily equates to a lack of due diligence by the prosecutor, especially if the system has worked until this particular instance," observing that the Allegheny County District Attorney monitors over 20,000 cases yearly with no evidence of routine Rule 600 violations. *Commonwealth v. Bradford*, 2 A.3d 628, 645 (Pa.Super.2010) (Bowes, J., dissenting). Defendant argues that adopting this view will result in the elimination of Rule 600 from Pennsylvania jurisprudence. He maintains that we cannot look to whether the system works on a systemic level when the right to a speedy trial is

an individual constitutional right. Accordingly, Defendant asserts that the Superior Court correctly concluded that the trial court did not abuse its discretion in dismissing the charges against Defendant pursuant to Rule 600.[4]

When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion. *See Commonwealth v. Selenski*, 606 Pa. 51, 994 A.2d 1083, 1087 (2010). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will ... discretion is abused." *Id.* (internal citation omitted). Our scope of review is limited to the record evidence from the Rule 600 hearing and the findings of the lower court, viewed in the light most favorable to the prevailing party. *See Id.*

As we have noted previously, this Court adopted Rule 600, and its predecessor Rule 1100, to protect defendants' constitutional rights to a speedy trial under the Sixth Amendment of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution, in response to the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *See Commonwealth v. Meadius*, 582 Pa. 174, 870 A.2d 802, 804 n. 1 (2005). In *Barker*, the United States Supreme Court declined to exercise legislative or rulemaking authority and instead adopted a balancing test to determine whether a defendant's speedy trial rights had been violated. The four part test required consideration of the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182. Although finding "no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months," the High Court held that the individual states "are free to prescribe a reasonable period consistent with constitutional standards." *Id.* at 523, 92 S.Ct. 2182.

---

4. The Allegheny County Law Office of the Public Defender filed an *amicus curiae* brief in support of Defendant.

In *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127, 130–33 (1972), we referred the matter to the Criminal Rules Committee to establish a definitive period of time for a speedy trial violation: "The theory behind this type of rule is that it eliminates the inherent vagueness encompassed in any balancing process and it avoids the necessity of a court determining a violation of this constitutional right on a case-by-case basis." *Id.* at 132–33. After careful consideration of the Rules Committee's recommendation, this Court adopted Rule 1100, which was later renumbered Rule 600. *See* Pa. R.Crim.P. 600, Note. Rule 600 "represents this Court's determination that the 'balancing test' announced in *Barker* provides only the minimum standards guaranteed by the Sixth and Fourteenth Amendments, and that such minimum standards are not adequate to provide Pennsylvania criminal defendants the protection guaranteed by the constitution of this Commonwealth." *Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174, 176 (1976) (internal quotation marks omitted). However, "while Rule 600 generally protects a defendant's right to a speedy trial, there is no constitutional significance to the number of days or the procedure chosen by the Court in enacting [Rule 600]." *Commonwealth v. Sloan*, 589 Pa. 15, 907 A.2d 460, 468 (2006). Thus, a violation of Rule 600 may result in dismissal of charges even where a court would not otherwise find a constitutional violation under the *Barker* factors.[5]

We have explained that Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases. *Selenski*, 994 A.2d at 1088; *Commonwealth v. Dixon*, 589 Pa. 28, 907 A.2d 468, 473 (2006). To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth

**5.** Theoretically, even where Rule 600 is not technically violated because the Commonwealth remained duly diligent, a constitutional violation could occur if there is an extensive delay. *Cf. Commonwealth v. West*, 595 Pa. 483, 938 A.2d 1034, 1040, 1045 (2007) (collecting cases and considering a due process challenge based on nine-year delay in execution of sentence).

fails to bring the defendant to trial within 365 days of the filing of the complaint (the "mechanical run date"), subject to certain exclusions for delays attributable to the defendant. Pa.R.Crim.P. 600(A)(3), (G). Conversely, to protect society's right to effective prosecution prior to dismissal of charges, "Rule 600 requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control." *Selenski*, 994 A.2d at 1088. If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, "the motion to dismiss shall be denied." Pa.R.Crim.P. 600(G). The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. *See Browne*, 584 A.2d at 908. As has been oft stated, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Selenski*, 994 A.2d at 1089. "If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant." Pa.R.Crim.P. 600(G).

In this case, there is no dispute that Rule 600(A)(3) was violated in that Defendant was not brought to trial within 365 days of the filing of the complaint against him. There is no contention that any of the time was attributable to Defendant. Instead, the delay in bringing the case to trial resulted from the District Judge's failure to forward the documents to the Court of Common Pleas in compliance with Pa.R.Crim.P. 547(B), a circumstance clearly "beyond the control of the Commonwealth." Pa.R.Crim.P. 600(G). Accordingly, the only question before this Court is whether the courts below erred in determining that the facts failed to trigger the Rule 600(G) due diligence exception.

As all parties and courts have recognized, this case closely resembles the fact-pattern of our decision in *Commonwealth v. Monosky*, 511 Pa. 148, 511 A.2d 1346 (1986). In *Monosky*, the district attorney did not participate in the preliminary hearing

at which the defendant was bound over for court. As in the case at bar, the magistrate failed to forward the transcript to the Court of Common Pleas within five days as required by the Rules of Criminal Procedure. When the transcript was finally provided, the district attorney petitioned the court for an extension of the relevant period provided under the former Rule 1100, which was about to expire.[6]

Our Court, therefore, considered "whether unexplained delay on the part of a district justice may serve to preclude the Commonwealth from obtaining an extension of time pursuant to Rule 1100." *Id.* at 1347. Unlike Defendant, Monosky did "not argue that the district attorney failed to exercise due diligence as required by the Rule," and instead, the focus of the dispute was on the effect of the judicial delay. *Id.* We concluded that this type of judicial delay was not addressed by the language of the former rule's provision for an extension, which contemplated delay "due to the court's inability to try the defendant within the prescribed period." *Id.* at 1348 (quoting former Pa.R.Crim.P. 1100(c)(3)). In addressing this uncovered area, we considered the purposes behind Rule 1100 and stated,

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 1100 must be construed in a manner consistent with society's right to punish

---

**6.** This Court has since eliminated the provisions for seeking an extension of time and amended the original time limits. Former Rule 1100(c) provided in relevant part:

> (c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.
>
> *     *     *
>
> (3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

*See Commonwealth v. Hawk*, 528 Pa. 329, 597 A.2d 1141, 1143 (1991) (quoting former Rule 1100).

and deter crime. In considering matters such as that now before us, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Id.* (internal citation omitted).

In approving the trial court's grant of an extension of time to the Commonwealth, this Court emphasized that the record was "utterly devoid of any evidence of an effort by the Commonwealth or the judiciary to avoid the requirements of Rule 1100" and that the district attorney was unaware of the charges against the defendant. *Id.* We held, "When the district attorney has timely filed an application for an extension and was unaware of inadvertent delay by the minor judiciary in processing the complaint, such judicial delay may justify granting the application." *Id.* The Court specifically did not consider "whether unexplained judicial delay, which occurs *after* the district attorney is aware of the charges against an accused, may justify an extension." *Id.* (emphasis in original).

Unlike *Monosky,* our decision in the case at bar turns on whether the Commonwealth exercised due diligence rather than a question of the reasonableness of the judicial delay unaddressed by the language of the Rule relating to petitions for extensions, which has since been deleted. Due diligence is a concept plainly addressed by the language of Rule 600, such that we need not pursue a balancing of rights as we did in *Monosky,* as that balancing has already been attained in the drafting of Rule 600. Rule 600(G) provides,

> If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain.... If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.

Therefore, unlike in *Monosky*, we need not consider whether there exists "misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused," as due diligence rather than misconduct is the relevant criteria. *Monosky*, 511 A.2d at 1348.

We next consider our prior decision in *Commonwealth v. Browne*, 526 Pa. 83, 584 A.2d 902 (1990), as discussed by the parties and courts below. In *Browne*, the defendant was issued a Notice of Arraignment by the district justice at the conclusion of the preliminary hearing. Under the system of arraignments and criminal trials in the relevant county, the trial date that corresponded to the defendant's arraignment date resulted in a situation where the trial would not commence until well beyond the mechanical run date under Rule 1100. Relevant to our ultimate decision, under the local county rules applicable in *Browne*, the district attorney was responsible for conducting the arraignments. *Id.* at 904. When the potential Rule 1100 violation became apparent, the Commonwealth sought an extension of the run date, which was denied by the trial court, resulting in the eventual grant of the defendant's Rule 1100 motion. The Superior Court reversed and reinstated the charges, finding that the Commonwealth exercised due diligence and that the delay was due to the district justice's scheduling of the arraignment.

We reversed, concluding that the Commonwealth failed to exercise due diligence. We stated that to act with due diligence, "prosecutors must do everything reasonable within their power to see that the case is tried on time." *Id.* at 905 (internal citation omitted). We determined that the district attorney's actions were not reasonable in *Browne*: "Particularly in light of the Lancaster County District Attorney's heavy responsibility under Local Rule 303 (with respect to conducting arraignments) . . ., it is not unreasonable or erroneous to expect the District Attorney's Office to track arraignment dates on a routine basis." *Id.* at 905–06. We emphasized that district attorney's offices must have "simple systems in place to carry out the routine duties of the office" to meet the due diligence standard. *Id.* at 906. We chastised the

district attorney, observing: "Practicing lawyers must maintain docket books to make sure that they appear in court on the right date, file pleadings on time, complete discovery in a timely fashion, and do not run afoul of statutes of limitation. No less is required of a properly administered district attorney's office." *Id.* However, we specifically distinguished *Browne*, where the delay was attributed to the district attorney's office lack of record keeping, from *Monosky* where the delay was attributable to the district justice. *Id.*

■ As stated above, "[d]ue diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Selenski*, 994 A.2d at 1089. Upon consideration of our precedent, we conclude that the District Attorney in the case at bar exercised due diligence. Unlike in *Browne*, the District Attorney herein had a system of monitoring cases.[7] The system was triggered by electronic

7. Deputy District Attorney Rebecca D. Spangler described the system in an affidavit attached to the Commonwealth's Response to Defendant's Motion to Dismiss Pursuant to Rule 600:

> During my tenure as supervising attorney I have instituted different procedures for tracking cases once received to facilitate the timely filing of criminal informations; these systems require that the court records and paperwork have been transmitted from the Magisterial District Justice Office to the Department of Court Records, a CR number has been created and a paper copy of the records received; once the electronic file and paper records are received a paper file is created and placed on an attorney screening shelf in order of formal arraignment date and the timely removal of files from that shelf by screening attorneys is monitored by myself; in addition, on a daily basis this attorney is provided a list from the Formal Arraignment Office of all the cases that were listed for formal arraignment that date with any cases in which the criminal information has not been filed highlighted; this attorney has assigned a senior screening attorney to check the daily list of missed formal arraignments, research the reason the criminal information was not timely filed and provide a report to this attorney daily; this attorney has also directed that the screening intake clerk separate cases in which the defendant is incarcerated and place those files on a separate priority shelf from which screening attorney's [sic] are required to complete the criminal information in the first instance; this attorney also periodically receives a list from the Formal Arraignment Office of cases in that office's separate file drawer on jail cases and personally researches whether and/or why the criminal information has not been filed. . . .

communication from the Office of Court Records, which, in turn, was initiated by the receipt of the transcript from the Magisterial District Judge. We do not find it unreasonable for the District Attorney to have relied upon the Magisterial District Judge's compliance with the Rules of Criminal Procedure to trigger its internal tracking system. While we might question the Commonwealth's diligence if it devised its system to be launched upon a district judge's adherence to a self-designed custom or practice, we conclude that here the District Attorney's office exercised due diligence when it relied upon the minor judiciary following the specific, mandatory Rules of Criminal Procedure, which placed upon the District Judge the obligation to transmit timely papers to the common pleas court.

Even assuming the facts in a light most favorable to Defendant as the prevailing party, we conclude that the trial court abused its discretion by misapplying the law when it concluded that reliance upon the Magisterial District Judge's obligation to comply with the Rules of Criminal Procedure did not constitute due diligence. Accordingly, as the Commonwealth exercised due diligence and the delay resulted from judicial delay beyond the Commonwealth's control, we reverse the decision of the Superior Court and order the trial court to reinstate the charges against Defendant.

Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE, Justices TODD and McCAFFERY join the opinion.

Justice EAKIN files a concurring opinion.

Justice SAYLOR files a dissenting opinion.

Justice EAKIN, concurring.

I concur in the reversal of the Superior Court's decision and the reinstatement of the charges against Defendant. I write

Affidavit of Deputy District Attorney Spangler, dated October 27, 2009, at unnumbered page 3.

separately to express my opinion regarding the timeliness of a defendant's exercise of the speedy trial right embodied in Pa.R.Crim.P. 600.

The failure to bring Defendant to trial within the prescribed time period was brought on by judicial, not prosecutorial, error. While the majority focuses on the propriety of a prosecutorial tracking system that relies on judicial adherence to rules of procedure, I would refrain from general pronouncements regarding the propriety of such systems; given the diverse nature of the 60 judicial districts in the Commonwealth, one size does not fit all when it comes to methods of tracking criminal cases for prosecution.

I believe our assessment of whether Defendant's right was violated must also take into account when the right was asserted, as the United States Supreme Court held in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). The majority notes the theory behind a rule establishing a definitive period of time for a speedy trial violation was to eliminate the vagueness inherent in balancing approaches, such as that announced in *Barker*. Majority Op., at 133–35, 46 A.3d at 700–01 (citing *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127, 130–33 (1972)). In *Hamilton*, the rationale for adopting a specific time period within which to bring an accused to trial was that "experience has demonstrated that under [the balancing] type of approach, there has been little success in eliminating criminal backlogs in populous counties where delays and the evils they create are most severe." *Hamilton*, at 131–32. However, the adoption of a mechanical rule whereby the passage of a specific amount of time automatically triggers the possibility of dismissal, without taking into account the circumstances mentioned in *Barker*, merely set the stage for a different form of evil: procedural gamesmanship.

Here, no further proceedings were held in Defendant's case after his preliminary hearing, yet he waited until exactly one week after Rule 600's run date to assert his right to a speedy trial. Clearly, he knew he was in jail, yet did nothing to inquire about his case; this bespeaks gamesmanship. The right to a speedy trial, like the privilege against self-incrimina-

tion or the right to counsel, must be invoked by a defendant. The right to a speedy trial is intended to protect an accused's right to a decent and fair procedure, as well as society's interest in bringing accused criminals to justice, *see Barker,* at 519–21, 92 S.Ct. 2182—it is not intended to afford a defendant a windfall by permitting him to sit on the right and then call foul when it is too late for the prosecution to do anything. If a defendant is going to complain about the prosecution's diligence, he must exercise diligence himself and not simply sit idly by, waiting for the clock to run out.[1]

Justice SAYLOR, dissenting.

I would affirm the order of the Superior Court based on the reasoning provided in its opinion. *See Commonwealth v. Bradford,* 2 A.3d 628 (Pa.Super.2010).

As the majority explains, per Rule of Criminal Procedure 600(G), a motion to dismiss based on the passage of the mechanical run date is to be denied "[i]f the court, upon hearing, shall determine that the Commonwealth exercised due diligence *and* that the circumstances occasioning the postponement were beyond the control of the Commonwealth[.]" Pa.R.Crim.P. 600(G) (emphasis added). Significantly, the common pleas and intermediate courts held that *neither* of these requirements was met in Appellee's circumstance. *See Bradford,* 2 A.3d at 634; *Commonwealth v. Bradford,* CC: 200915191, *slip op.* at 15–16, 2009 WL 8549852 (C.P.Allegheny, Dec. 29, 2009). The Commonwealth's framing of the issue in the instant appeal, however, is confined to the first of these requirements, due diligence. As such, I question the majority's decision to reverse, since the alternative and

---

1. Indeed, *Barker* recognized the speedy trial right differs from other constitutional rights:

   [D]eprivation of the right may work to the accused's advantage. Delay is not an uncommon defense tactic.... Thus, unlike the right to counsel or the right to be free from compelled self-incrimination, deprivation of the right to speedy trial does not *per se* prejudice the accused's ability to defend himself.

   *Id.,* at 521. An assessment that does not take into account whether the defendant asserted the right, and if not, why not, encourages the sort of manipulation of the system that *Barker* sought to prevent.

extant holding (*i.e.*, that the cause of the delay was not beyond the control of the Commonwealth) serves as an independent basis supporting the orders of the common pleas and intermediate courts.

To the extent the majority addresses the beyond-the-control element, it does so in a summary fashion, affording no attention to the salient analysis of the Superior Court, as follows:

> We stress that compliance with Rule 600 was not at all beyond the Commonwealth's control in this case. The Commonwealth could have kept a list, used a diary, maintained a docket, or employed some other record-keeping system to track this case, but the Commonwealth elected not to do so. That is, the A.D.A. walked out of the preliminary hearing without any record of this case for Rule 600 purposes, and the District Attorney's Office assumed the district justice and Department of Court Records would remind the District Attorney's Office about this case at some later time. Such conduct is inappropriate. The Commonwealth cannot choose to rely on offices it does not control and then, when Rule 600 time limits expire, assert a lack of control over those offices as an excuse for noncompliance with the rule.

*Bradford,* 2 A.3d at 634. Against this rationale, I find little force in the majority's conclusory pronouncement that the circumstances were "clearly 'beyond the control of the Commonwealth.'" Majority Opinion, at 136, 46 A.3d at 702 (quoting Pa.R.Crim.P. 600(G)).

To the degree this appeal touches on judicial delay, I note that, per federal constitutional law, such delay is to be considered a factor in an appropriate speedy trial analysis. *See Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) (stating that a "more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant"). Thus, if Rule 600 is to be understood as subsuming and supplementing the federal constitutional inquiry, *see* Majority Opinion, at 135, 46

A.3d at 701, the rule obviously must take judicial delay into account as a factor impacting defendants' rights.

In summary, I believe the common pleas and intermediate courts correctly found neither the due-diligence nor the be-yond-the-control requirement is met where the Common-wealth fails to independently monitor its own prosecution, particularly since such failure removes an important safeguard against impairment of constitutional interests via unnecessary delay. *Accord Bradford,* 2 A.3d at 634–36. In this regard, I share the Superior Court's view that the Commonwealth should not be permitted to "outsource" aspects of its obli-gation to bring cases to trial in a timely fashion, *id.* at 634, free of attendant responsibility and consequences.