J-S71016-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| TYSHAWN PLOWDEN | |
| Appellee | No. 143 WDA 2015 |

Appeal from the Order January 6, 2015
In the Court of Common Pleas of Cambria County
Criminal Division at No(s): CP-11-CR-0002528-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, J., and OTT, J.

DISSENTING MEMORANDUM BY OTT, J.:          **FILED APRIL 08, 2016**

I respectfully disagree with the majority's decision that affirms the order of the trial court granting Plowden's Rule 600 motion to dismiss. Specifically, I disagree with the majority's conclusion that the Commonwealth failed to demonstrate excusable delay to extend the Rule 600 run date.  In my view, because the record reflects the Commonwealth exercised due diligence in pursuing Plowden's return under the Interstate Agreement on Detainers ("IAD"), 42 Pa.C.S. § 9101 *et seq*., and the delay in transferring Plowden from New York was occasioned by circumstances beyond the control of the Commonwealth, I would conclude that the entire period of the IAD process, commencing October 9, 2014, is excusable delay. Therefore, I dissent.

The record shows in June of 2014, while Plowden was in prison in Cambria County, Plowden requested and was granted release on nominal bail. N.T., 1/5/2015, at 11–12. Plowden would have been free to leave the Cambria County Jail, but extradition proceedings had been instituted by New York authorities. *Id.* at 12. The Commonwealth admitted it should have known there were pending criminal charges against Plowden before Plowden's July 3, 2014, extradition hearing. N.T., 1/5/2015, at 29–30, 39. *See also id.* at 12–13. However, the Commonwealth took no steps to stay Plowden's extradition to New York. *Id.* at 13. Thereafter, the Commonwealth, upon realizing it would be necessary to bring Plowden back for trial, immediately commenced communication with New York authorities to effectuate Plowden's return to Pennsylvania. *Id.* at 14–15.

I agree with the trial court that the Commonwealth waited until October 9, 2014 to formally request Plowden's return from New York. As such, the time from July 3, 2014 to October 9, 2014 should run against the Commonwealth. However, after October 9, 2014, the Commonwealth worked steadily with New York authorities for Plowden's transfer.

Detective Lia DeMarco of the Cambria County District Attorney's Office testified her initial telephone contact with New York was on July 3, 2014. *Id.* at 15. She further detailed the numerous communications recorded in her log, admitted as Commonwealth Exhibit 1, both before and after October 9, 2014, on which date she formally started the process under the IAD, 42

Pa.C.S. § 9101 et seq. *Id.* at 15–16, 40. Detective DeMarco's log and her testimony reveal her persistent, ongoing efforts to effectuate Plowden's transfer from New York. *See* Commonwealth Exhibit 1.[1]

Following Detective DeMarco's initiation of the IAD process on October 9, 2014, New York scheduled a hearing for December 10, 2014. *Id.* at 51–52. However, "New York [authorities] got their signals crossed," and instead of holding an IAD hearing, there was an extradition hearing. *Id.* at 21. On December 11, 2014, Detective DeMarco learned Plowden had refused to waive extradition, and she would need to obtain a governor's warrant pursuant to the Uniform Criminal Extradition Act (UCEA), 42 Pa.C.S. §§ 9121-9148. *Id.* at 41. She initiated the paperwork for the governor's warrant on December 12, 2014. *Id.*

Despite the governor's warrant, testimony further revealed that transfer was effectuated pursuant to the IAD. *Id.* at 42. Detective DeMarco testified that on December 22, 2014, and December 29, 2014, the Cambria County District Attorney's Office overnighted IAD forms to Pennsylvania authorities for transmission to New York. *Id.* at 42–43. Detective DeMarco further testified she did not know when Cambria County was informed that Plowden was available to be picked up from New York authorities because

---

[1] Commonwealth Exhibit 1 reflects Detective DeMarco's contacts with New York authorities after October 9, 2014, on the following dates: 10/17/2014, 10/20/2014, 10/23/2014, 10/29/2014, 11/13/2014, 11/20/2014, 12/10/2014, 12/11/2014, 12/12/2014.

she was not there when the call came to confirm the transfer. *Id.* at 53. She had gone on maternity leave on December 19, 2014. *Id.* at 19. She testified that the call from New York to transfer Plowden came "after the 19th." *Id.* at 54. She confirmed Cambria County deputies would pick up Plowden "pursuant to the IAD based upon the materials that were sent out on December the 29th [2014]." *Id.* at 43. Commonwealth counsel represented Plowden was scheduled to be picked up in New York on January 7, 2015. *Id.* at 7.

Excusable delay is delay that occurs as a result of circumstances beyond the Commonwealth's control and despite its due diligence. ***Commonwealth v. Ramos***, 936 A.2d 1097, 1102 (Pa. 2007). The Pennsylvania Supreme Court has reiterated that "to act with due diligence, "prosecutors must do everything reasonable within their power to see that the case is tried on time." ***Commonwealth v. Bradford***, 46 A.3d 693, 703–704 (Pa. 2012), *citing* ***Commonwealth v. Browne***, 584 A.2d 902, 905 (Pa. 1990) (internal citation omitted).

Here, the Commonwealth initiated the formal IAD request on October 9, 2014, exercised due diligence throughout the IAD process, and had **no control** over the delay by New York authorities in returning Plowden. Accordingly, on this record, I would reverse the order of the trial court dismissing the charges against Plowden with prejudice, as I would find no violation of Rule 600. ***See e.g., Bradford, supra*** (dismissal not appropriate

under Rule 600 when the Commonwealth acted with due diligence in relying upon the judicial system to transfer documents in accordance with the Rules of Criminal Procedure); *see also Commonwealth v. Kubin*, 637 A.2d 1025, 1027 (Pa. Super. 1994) ("[W]e recognize the Commonwealth cannot force another jurisdiction to act[.]").

Accordingly, very respectfully, I dissent.