J-A05043-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN BROCK | : | |
| | : | |
| Appellant | : | No. 26 EDA 2022 |

Appeal from the PCRA Order Entered November 16, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0708871-2003

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED MAY 3, 2023**

John Brock (Appellant) appeals from the order denying his first petition for relief under the Post Conviction Relief Act (PCRA).[1]   We affirm.

This Court previously explained:

At approximately 5:45 a.m. on June 2, 2003, police responded to a call for a shooting at the home of Valerie Copper, in Philadelphia. Upon arrival, officers encountered Etienne Johnson, who had been shot in the chest.  Witnesses at the house described the shooter as a black male, 5'9", and wearing a black and orange jacket.  This description was broadcast over the police radio.

While driving towards the scene within minutes of the initial call, Officer Timothy Hart observed Appellant a few blocks from the shooting, walking in the opposite direction.  Appellant, a black male, was wearing an orange and black hooded sweatshirt underneath a black jacket.  Officer Hart made a U-turn and exited his vehicle to approach Appellant.  As he did so, Appellant immediately fled on foot.  Officers Hart and Michael Shankin pursued Appellant.  Officer Shankin ultimately apprehended

---

[1] 42 Pa.C.S.A. §§ 9541-9546.

Appellant and brought him back to his police vehicle to be transported to the hospital for injuries sustained during his flight. Prior to Appellant being transported, Copper was brought to the area and she identified Appellant as the shooter. A search at the hospital revealed crack cocaine within Appellant's clothing.

*Commonwealth v. Brock*, 4 A.3d 678 (Pa. Super. 2010) (unpublished memorandum at 1-2) (affirming the trial court's dismissal of charges based on a Rule 600 violation).

The Commonwealth successfully petitioned for review. The Pennsylvania Supreme Court further explained:

On June 3, 2003, the Commonwealth filed a criminal complaint against [Appellant], charging him with burglary, attempted murder, aggravated assault, criminal trespass, and firearms violations. [Appellant] was arrested on June 16, 2003. The case was first listed for trial on December 15, 2003, but was continued numerous times until March 8, 2005. On that date, [Appellant], who was on house arrest pursuant to Pa.R.Crim.P. 600(E), failed to appear for court. A bench warrant for his arrest was issued on March 18, 2005; however, when police went to his residence on that date[;][ he was not there. Thereafter, the Commonwealth made no further efforts to locate him.

On January 25, 2006, [Appellant] was arrested in Williamsport, Pennsylvania on unrelated charges. On that same day, a Williamsport police officer notified authorities in Philadelphia that [Appellant] was in custody, but no attempt was made to secure his return to Philadelphia for trial. On September 27, 2006, authorities from the State Correctional Institute at Camp Hill ("SCI-Camp Hill") notified Philadelphia police that [Appellant] was in custody on an unrelated matter. At this point, the Commonwealth arranged for [Appellant's] return to Philadelphia to stand trial on the June 3, 2003 charges.

On May 24, 2007, [Appellant's] attorney orally argued that [Appellant] was entitled to the dismissal of all charges, with prejudice, pursuant to Pa.R.Crim.P. 600[,] because more than 365 days of non-excludable time had elapsed from the date of the filing of the original criminal complaint. That same day, the trial court

held a hearing on [Appellant's] oral motion. Eight months later, the trial court held a second hearing on January 18, 2008, at which the Commonwealth argued that [Appellant] waived his Rule 600 claim by failing to file a written motion. Additionally, the Commonwealth asserted that [Appellant] waived his Rule 600 claim by failing to appear for the trial listing on March 8, 2005. On January 18, 2008, the trial court granted [Appellant's] motion and dismissed the charges against him.

*Commonwealth v. Brock*, 61 A.3d 1015, 1016 (Pa. 2013).

The Pennsylvania Supreme Court concluded that Rule 600 requires a defendant to file a **written** motion to dismiss. *Id.* at 1019. As Appellant had not filed a written motion, the Pennsylvania Supreme Court reversed the dismissal of charges and remanded the case to the trial court for further proceedings. *Id.* at 1019-20. The Supreme Court held: "[A] motion to dismiss pursuant to Pa.R.Crim.P. 600 must be made in writing, and a copy of such motion must be served on the Commonwealth's attorney." *Id.* at 1020. The Court further concluded that Appellant had waived his Rule 600 claim by failing to appear on his scheduled trial date. *Id*. at 1022.

This Court subsequently explained:

Following remand, on May 19, 2014, Appellant filed a motion to suppress the revolver and other physical evidence, and on October 30, 2014, he filed a motion to suppress Copper's identification. Following several continuances, a hearing was held on November 22, 2016. At the hearing, the Commonwealth presented the testimony of Officer Hart and Sergeant Daniel Gorman. Appellant did not call any witnesses[] but introduced into evidence the weather report for the morning of June 2, 2003. At the conclusion of the hearing, the trial court denied Appellant's motions. N.T., 11/22/2016, at 50-52.

….

- 3 -

A jury trial occurred from November 29, 2016 to December 2, 2016…. Additionally, because Copper died prior to Appellant's trial, the trial court permitted the introduction of Copper's preliminary hearing testimony, which detailed the events surrounding the shooting, as substantive evidence. *See* N.T., 11/28/2016, at 41-42 (ruling on the Commonwealth's unavailability motion); N.T., 11/29/2016, at 61-72 (reading Copper's redacted preliminary hearing testimony into the record).

At the conclusion of the trial, the jury found Appellant guilty [of aggravated assault, possession of an instrument of crime, violations of the Uniform Firearm[s] Act and not guilty of attempted murder and burglary]. Separately, Appellant pleaded guilty to PWID. On March 3, 2017, the trial court sentenced Appellant to an aggregate term of 15½ to 31 years of incarceration followed by 5 years of probation.

Appellant filed a post-sentence motion, which the trial court denied. …

*Commonwealth v. Brock*, 215 A.3d 662 (Pa. Super. 2019) (unpublished memorandum at 1-5), *appeal denied*, 222 A.3d 754 (Pa. 2019). This Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal. *See id.*

Appellant timely filed a *pro se* PCRA petition on March 18, 2020. The PCRA court appointed counsel, who filed an amended petition on August 18, 2020. Although the PCRA court conducted several *Grazier*[2] hearings, Appellant chose to continue to be represented by appointed PCRA counsel, William Ciancaglini, Esquire (Attorney Ciancaglini). On September 13, 2021, the Commonwealth filed a motion to dismiss. Following appropriate notice,

_____

[2] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

the PCRA court dismissed the petition on November 16, 2021. This timely appeal followed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for review:

Did the PCRA Court err and/or abuse its discretion when it denied [Appellant's] petition under the PCRA where:

a. counsel was ineffective for failing to seek dismissal based upon a violation of [A]ppellant's constitutional right to a speedy trial;

b. PCRA counsel was ineffective for failing to adequately raise and advance the claim premised upon the failure to seek dismissal based upon constitutional speedy trial rights; and,

c. PCRA counsel was ineffective for failing to raise a claim that trial counsel was ineffective for failing to request a **Kloiber**[3] jury instruction.

Appellant's Brief at 4 (footnote added).

In reviewing the denial of PCRA relief, this Court "is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Sandusky**, 203 A.3d 1033, 1043 (Pa. Super. 2019) (citation omitted). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Commonwealth v. Mitchell**, 105 A.3d 1257, 1265 (Pa. 2014) (citation omitted).

_____

[3] **See Commonwealth v. Kloiber**, 106 A.2d 830 (Pa. 1954).

Appellant's first two issues present layered claims of ineffective assistance of counsel. "When analyzing such claims, we begin, as we must, with the presumption that counsel acted effectively." *Commonwealth v. Johnson*, No. 792 CAP, 2023 Pa. LEXIS 236, at *11 (Pa. filed Feb. 22, 2023).

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

*Sandusky*, 203 A.3d at 1043 (citations omitted). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1128 (Pa. 2011).

Appellant argues all prior counsel rendered ineffective assistance by not preserving his claim regarding his state and federal constitutional right to a speedy trial. Appellant's Brief at 33, 50. *See* U.S. CONST., Amend VI; PA. CONST., Art. I, § 9.

> "In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Miskovitch*, 64 A.3d 672, 677 (Pa. Super. 2013) (citation and quotation marks omitted). Speedy trial analysis requires a two-step inquiry: "we first consider whether the delay violated Pa.R.Crim.P. 600, and if not, we may proceed to the four-part constitutional analysis set forth

in **Barker** [**v. Wingo**, 407 U.S. 514 (1972)]." **Commonwealth v. Colon**, 87 A.3d 352, 357 (Pa. Super. 2014).

**Commonwealth v. Martz**, 232 A.3d 801, 812 (Pa. Super. 2020). **Barker**'s four-part constitutional analysis requires consideration of (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. **See Commonwealth v. Bradford**, 46 A.3d 693, 700-01 (Pa. 2012) (discussing **Barker**).

Regarding the length and reason for delay, Appellant points to the delay following his January 25, 2006 arrest in Williamsport. Appellant's Brief at 42. Appellant states that the Commonwealth took no action after being notified by authorities in Williamsport that Appellant was in custody and available to be returned to Philadelphia. **Id.** Appellant asserts the Commonwealth offered no explanation for failing to take any action for a year. **Id.**

Appellant also challenges the delay following litigation of his original Rule 600 motion until the Supreme Court reversed and remanded his case. **Id.** at 43. Appellant claims the Commonwealth's "dereliction" caused a 5½ year delay. **Id.**

Finally, Appellant asserts that his trial counsel rendered ineffective assistance by claiming a Rule 600 violation, "without asserting a claim under the state [and] federal constitution." **Id.** (emphasis omitted). Appellant argues the "extraordinary period of delay was prompted by the twin failures of the Commonwealth and trial counsel." **Id.** at 43-44.

Regarding the third **Barker** factor, Appellant claims he asserted his speedy trial rights "more than a decade and-a-half ago." **Id.** at 44. Appellant argues the delay prejudiced his defense. **Id.** at 45. According to Appellant, the Commonwealth destroyed the firearm used in the shooting, while the sole eyewitness, Ms. Copper, died before trial. **Id.** Appellant states that the Commonwealth presented no living eyewitness to the shooting. **Id.** at 46. Appellant contends cumulative "events and errors resulted in impairment of, and prejudice to, the defense." **Id.** at 47.

The PCRA court explained its rejection of Appellant's claims as follows:

In this instant case, Appellant was charged on June 2, 2003 and arrested on June 16, 2003. The case was initially listed for trial on December 15, 2003 but was continued numerous times until March 8, 2005. In its 2010 opinion addressing the Commonwealth's initial appeal in this case, the Superior Court noted that at the time of Appellant's March 8, 2005, trial date, "252 days chargeable to the Commonwealth had elapsed." **Commonwealth v. Brock**, 4 A.3d 678, slip op. at 10 (Pa. Super. June 8, 2010) (unpublished). Appellant failed to appear at the scheduled trial and absconded from house arrest. A bench warrant for Appellant's arrest was issued on March 18, 2005. Appellant was arrested in Williamsport, Pennsylvania and held in custody for an unrelated matter. Appellant was not transported to Philadelphia for trial in this matter until September of 2006. On May 24, 2007, [trial counsel] made an oral motion for dismissal of all charges pursuant to Rule 600. It is at this procedural stage that Appellant avers that [trial counsel] should have also raised a constitutional speedy trial claim.

A constitutional claim raised at that procedural posture would have failed because Appellant clearly did not act to assert his right prior to absconding from the jurisdiction and was responsible for the lengthy period of delay between his flight and trial. Further, while Appellant did demonstrate an assertion of his right to speedy trial after returning to the jurisdiction by raising a claim under Rule 600, such assertion was undermined by Appellant requesting

- 8 -

a further continuance while the motion was pending. It is evident after even a cursory analysis of the factors set forth in [**Barker**], given the history of the case, that a claim of violation of Appellant's constitutional right to speedy trial brought by [trial counsel] at the same time as his failed Rule 600 motion would be without merit. Accordingly, Appellant's claim that [PCRA counsel] was ineffective due to his failure to raise a claim of [trial counsel's] ineffectiveness must fail.

PCRA Court Opinion, 6/29/22, at 12-13.

Regarding the delay following remand, the PCRA court further explained:

The Pennsylvania Supreme Court reversed the Superior Court's affirmation of the trial court's ruling on the Rule 600 motion, and the case was remanded to this court on February 19, 2013. Appellant's jury trial commenced on November 29, 2016. **Over the course of more than three years between remand and trial, at least ten trial or hearing dates were continued due to defense requests, Appellant failed to appear for two scheduled trial dates, and Appellant requested time to obtain new representation twice**. **Further, Appellant again requested to postpone trial in order to obtain new counsel on the first day of trial on November 28, 2016.** The request was denied, and trial commenced. Tr. at 8-16, Nov. 28, 2016. Appellant renewed his request at the outset of the second day of trial, November 29, 2016. Tr. at 4-5, Nov. 29, 2016. This request was also denied. *Id.* This pattern of behavior by Appellant clearly demonstrates a lack of assertion of his right to a speedy trial, and that Appellant in fact had the goal of postponing his trial for as long as possible. For these reasons, the constitutional speedy trial claim underlying [post-remand trial counsel's] alleged ineffectiveness is without merit. Accordingly, Appellant's assertion that [PCRA counsel] was ineffective for failing to properly raise [post-remand counsel's] ineffectiveness must fail.

*Id.* at 13-14 (emphasis added).

The record supports the PCRA court's analysis. Accordingly, Appellant's claims lack arguable merit. **See id.** We further observe that the record

reflects that Appellant did not assert speedy trial rights while incarcerated in Williamsport. "Whether and how a defendant asserts his right is closely related to the other factors … mentioned." *Barker*, 407 U.S. at 532. The United States Supreme Court emphasized: "[F]ailure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* Appellant's ineffectiveness claims would fail for this reason as well.

Appellant next argues that PCRA counsel rendered ineffective assistance by failing to claim prior counsel's ineffectiveness for not requesting a *Kloiber* instruction. Appellant's Brief at 56-57. Regarding the arguable-merit prong of his ineffectiveness claim, Appellant emphasizes that only one witness identified him as the shooter. *Id.* at 60. Appellant states: "Valerie Copper testified that she was hiding in a different room when she heard the shooting." *Id.* Upon leaving her hiding spot, she

> entered the room complainant was shot in. Copper testified that as she entered the room, she saw a man she identified as [A]ppellant running out the front door. She identified him by the jacket he was wearing as he fled the home. When asked if she knew the shooter, Copper told police in her interview on the day of the shooting that "I don't know him from a can of paint."

*Id.* at 60-61 (citations omitted). Appellant claims that under these circumstances, trial counsel should have requested a *Kloiber* instruction. *Id.* at 61.

A *Kloiber* instruction may be proper when an eyewitness is hindered in identifying a defendant. *Commonwealth v. Brown*, 196 A.3d 130, 163 (Pa. 2018). Our Supreme Court explained that when

- 10 -

the witness is not in a position to clearly observe the assailant or he is not positive as to identity, or his positive statements as to identity are weakened by qualification, or by the failure to identify the defendant on one or more prior occasions, the accuracy of the identifications is so doubtful that the [c]ourt should warn the jury that the testimony as to identity must be received with caution.

*Kloiber*, 106 A.2d at 826-27. A *Kloiber* charge is not mandatory "[w]here an eyewitness has had 'protracted and unobstructed views' of the defendant and consistently identified the defendant 'throughout the investigation and at trial.'" *Commonwealth v. Ali*, 10 A.3d 282, 303 (Pa. 2010) (quoting *Commonwealth v. Dennis*, 715 A.2d 404, 411 (Pa. 1998)).

Here, the PCRA court reviewed the evidence and concluded a *Kloiber* instruction was not warranted:

> Appellant specifically asserts that "Ms. Copper's testimony should have been received with caution because she testified, 'I was hiding in the kitchen, in between a trash can and the basement door' which obstructed Ms. Copper's view to the living room of the house where the shooting occurred[,] and as a result[,] she did not actually witness the shooting occur." Concise Statement ¶ 7, January 18, 2022 (edited for grammar).
>
> Ms. Copper was unavailable to testify at trial so the transcript of her testimony at the preliminary hearing was read to the jury. At the preliminary hearing, Ms. Copper testified that Appellant first came to her house with a woman she knew. Tr. at 62, Nov. 29, 2016. The woman asked Ms. Copper to give her five dollars, so she could then give the money to Appellant. *Id.* Ms. Copper gave them the money and they left. *Id.* at 64. Before Appellant left, he said "Oh, I'll be back. I'm coming back." *Id.* Later, Ms. Copper was in her kitchen when she heard knocking on the door followed by commotion in the living room. *Id.* She looked around the corner and saw Appellant holding a silver gun. *Id.* She went back into the kitchen to hide and heard gunshots. *Id.* at 65. When she went into the living room, she saw Appellant running out the door. *Id.* at 67, 72. She knew it was [A]ppellant because of the jacket he was wearing. *Id.* at 72.

Ms. Copper positively identified Appellant as the person who was in her home holding the firearm. Ms. Copper had good opportunity to identify Appellant as the person holding the gun, as she had just seen him on her porch when he was looking for money and her view was unobstructed when she leaned back to look around the corner. **Ms. Copper's identification of Appellant as the person holding the firearm remained positive and unqualified even after cross-examination and was not called into doubt by a prior failure to identify.**

Ms. Copper specifically testified that she did not see Appellant fire the gun. *Id.* at 66. The testimony that Appellant entered Ms. Copper's home and brandished a firearm, along with Officer Hart's testimony that he saw Appellant drop a silver handgun matching the one described by Ms. Copper, and Carl Rone's expert testimony that the projectiles recovered from Ms. Copper's house matched the handgun Appellant dropped, were all presented together as circumstantial evidence establishing that Appellant shot the victim. **The jury was charged on the difference between direct and circumstantial evidence** and fulfilled their role as factfinders by determining that the circumstantial evidence was sufficient to convict Appellant.

Because Ms. Copper positively identified Appellant as the person she saw holding a silver handgun in her home, and the jury was charged on the difference between direct and circumstantial evidence, a cautionary jury instruction was not required under **Commonwealth v. Kloiber**. Therefore, a claim that [trial counsel] was ineffective for failing to request such an instruction is without merit, and Appellant's ineffectiveness claim as to [PCRA counsel] must fail.

PCRA Court Opinion, 6/23/22, at 15-18 (footnotes omitted, emphasis added).

The PCRA court's findings are supported by the record, and we discern no abuse of discretion in the court's legal conclusion. Consequently, we affirm the dismissal of Appellant's PCRA petition. *See Sandusky*, 203 A.3d at 1043; *Chmiel*, 30 A.3d at 1128.

Order affirmed.

- 12 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/03/2023</u>