J-S47008-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KEVIN WILSON | |
| Appellant | No. 59 EDA 2013 |

Appeal from the Judgment of Sentence November 16, 2012
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012880-2010

BEFORE:  MUNDY, J., OLSON, J., and WECHT, J.

MEMORANDUM BY MUNDY, J.:                    **FILED SEPTEMBER 22, 2014**

Appellant, Kevin Wilson, appeals from the November 16, 2012 aggregate judgment of sentence of 20 to 40 years' imprisonment, followed by 15 years' probation, imposed after a jury found him guilty of criminal attempt – murder of the first degree, aggravated assault, robbery, possession of a firearm without a license, carrying a firearm without a license, and possession of an instrument of a crime (PIC).[1]  After careful review, we affirm.

The trial court has set forth the relevant facts and procedural history as follows.

---

[1] 18 Pa.C.S.A. §§ 901(a) (to commit 18 Pa.C.S.A. § 2502(a)), 2702(a), 3701(a)(ii), 6105(a)(1), 6106(a)(1), and 907(a), respectively.

At 12:30 a.m. on July 12, 2008, the Complainant (Terrance Savage) sat in the driver's side seat of his motor vehicle and conversed with a friend through the open front passenger window. After a short conversation, [t]he Complainant's friend left. Approximately ten seconds later, [] Appellant approached the front driver's side window, leaned in the open window, and held a black gun against the Complainant's abdomen. [] Appellant told the Complainant to "give everything up." With his left hand, [] Appellant took the Complainant's chain, watch, and one thousand dollars. [] Appellant then told the Complainant his name. The Complainant testified that [] Appellant said "his name was Scar Face Kev and if I wanted any trouble, ask about him." After Appellant gave his name, he shot the Complainant in the stomach, and walked away.

While the robbery was occurring, Kendall McGill was approximately 40 feet away playing dice with other males. McGill saw [] Appellant at the Complainant's car. Approximately a minute later, McGill heard a gunshot and saw [] Appellant quickly walk away from Complainant's car as he put a black gun in his left waistband with his right hand. [] Appellant then walked past McGill and around the corner.

After [] Appellant walked around the corner, the Complainant started driving to Temple University Hospital. While driving, the Complainant called his mother and told her that he had been shot. When the Complainant arrived at the emergency room, doctors performed surgery.

After approximately four days, the Complainant left the hospital without permission because he feared for his safety. After leaving the hospital, the Complainant went home. However, the Complainant still did not tell the police that [] Appellant had shot him because he feared for his life and did not want to be labeled a rat. However, while the Complainant was home recovering, he informed

his mother and friends that [] Appellant had shot him. Three months later, the Complainant finally told the police who had shot him.

In March 2010, detectives attempted to arrest Appellant but they could not locate him. On April 9, 2010, the Commonwealth learned that [] Appellant was in custody at State Correctional Institution (SCI) Greene. In April 2010, Officer Timothy Simpson of the East Division Warrant Unit faxed a writ to SCI Green[e] to bring [] Appellant to court. However, [] Appellant was not brought down. Although the Commonwealth faxed additional requests on May 4, 2010, May 21, 2010[,] and June 2, 2010, [] Appellant was still not brought down. Finally, the Commonwealth paid approximately $2[,]000[.00] to extradite [] Appellant to Philadelphia. On June 8, 2010, [] Appellant was extradited and arrested. …

Trial Court Opinion, 9/25/13, at 2-4 (footnotes omitted).

On June 29, 2011, Appellant filed a motion to dismiss pursuant to Pa.R.Crim.P. 600(G).[2] On March 8, 2012, at Appellant's request, the trial court appointed new counsel to represent him. New counsel filed a renewed Rule 600(G) motion on June 29, 2012. The trial commenced with jury selection on August 22, 2012. On August 28, 2012, following its charge to the jury, the trial court denied Appellant's Rule 600(G) motion. Later that day the jury convicted Appellant of the previously mentioned charges. On November 16, 2012, the trial court sentenced Appellant to an aggregate

_____

[2] Rule 600, as applicable in this case, was rescinded on October 1, 2012, effective July 1, 2013, and replaced by the new Rule 600 on July 1, 2013. Under the new version of Rule 600, the paragraphs have been reorganized. However, for purposes of our review, we apply and cite to the version of Rule 600 effective on August 28, 2012, when Appellant's motion to dismiss pursuant to Rule 600 was denied.

term of 20 to 40 years' imprisonment, followed by 15 years' probation.[3] On

December 10, 2012, Appellant filed a timely notice of appeal.[4]

On appeal, Appellant raises the following three issues for our review.

1. [Whether] the jury verdict was against the weight and sufficiency of the evidence[?]

2. [Whether] the trial judge erred by denying the 600([G]) motion … on the last day of the jury trial, and abused his discretion in making this ruling that the Commonwealth was duly diligent in bringing this case to trial in a timely manner[?]

3. [Whether] the trial judge erred by allowing a Commonwealth witness, the mother of the victim to testify in the case about statements she overheard on a telephone or told someone on the phone about who was in fact the one who robbed [her] son[?]

Appellant's Brief at 8.

In his first issue, Appellant asserts that the jury's verdict was contrary

to the weight and sufficiency of the evidence. *Id.* at 9. Before we address

the merits of this issue, we must first determine if Appellant has preserved it

for appellate review.

_____

[3] Specifically, Appellant was sentenced at count 1, criminal attempt – murder of the first degree, to 20 to 40 years' imprisonment; count 2, aggravated assault, merged with count 1; count 3, robbery, 10 years' probation consecutive to count 1; count 4, possession of a firearm, five years' probation consecutive to count 3; and on count 7 firearms not to be carried without a license and count 9, PIC, no further penalty was imposed. Sentencing Order, 11/16/12.

[4] Appellant and the trial court have timely complied with Pennsylvania Rule of Appellate Procedure 1925.

- 4 -

The plain text of Rule 1925(b) requires an appellant's concise statement to "identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). The Rule also requires that "[e]ach error identified in the Statement will be deemed to include every subsidiary issue contained therein which was raised in the trial court …." **Id.** at 1925(b)(4)(v). Finally, any issues not raised in accordance with Rule 1925(b)(4) will be deemed waived. **Id.** at 1925(b)(4)(vii). Our Supreme Court has held that Rule 1925(b) is a bright-line rule.

> Our jurisprudence is clear and well-settled, and firmly establishes that: Rule 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and serve a Rule 1925(b) statement, when so ordered; any issues not raised in a Rule 1925(b) statement will be deemed waived; the courts lack the authority to countenance deviations from the Rule's terms; the Rule's provisions are not subject to *ad hoc* exceptions or selective enforcement; appellants and their counsel are responsible for complying with the Rule's requirements; Rule 1925 violations may be raised by the appellate court *sua sponte,* and the Rule applies notwithstanding an appellee's request not to enforce it; and, if Rule 1925 is not clear as to what is required of an appellant, on-the-record actions taken by the appellant aimed at compliance may satisfy the Rule. We yet again repeat the principle first stated in [**Commonwealth v.**] **Lord**, [719 A.2d 306 (Pa. 1998)] that must be applied here: "[I]n order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925. Any issues not raised in a Pa.R.A.P. 1925(b) statement will be deemed waived." [**Id.**] at 309.

***Commonwealth v. Hill***, 16 A.3d 484, 494 (Pa. 2011) (footnote omitted).

In this case, Appellant's Rule 1925(b) statement contains only allegations of error relative to the trial court's ruling on his Rule 600 motion, and the trial court's admission of certain testimony from the Complainant's mother. ***See*** Appellant's Rule 1925(b) statement, 1/24/13. Appellant's Rule 1925(b) statement does not include any claim addressing the sufficiency of the Commonwealth's evidence or averring that the verdict was against the weight of the evidence. ***See id.*** Therefore, following our Supreme Court's instructions in ***Hill***, we conclude Appellant's first issue on appeal is waived for failure to include it in his Rule 1925(b) statement.

In his second issue, Appellant argues that the trial court "failed to make a timely ruling in dismissing [Appellant's motion filed] pursuant to [R]ule 600([G])." Appellant's Brief at 11. Appellant also contends the trial court erred in not attributing to the Commonwealth the time from March 5, 2010, when an arrest warrant for Appellant had been issued, to June 8, 2010, when Appellant was located at SCI Greene and arrested. ***Id.*** "Appellant was in state custody in Pennsylvania from March 5, 2010 to June 8, 2010 and the Commonwealth knew or should have known that[,] thereby attributing these 95 days to the Commonwealth. Faxing a bring down request to SCI Greene is not due diligence without any follow up." ***Id.*** Accordingly, Appellant argues the trial court's conclusion that only 363 days were attributable to the Commonwealth is incorrect, and that the 95 days

between March 5 and June 8, 2010 should be attributed to the Commonwealth. *Id.* at 11-12.[5]

"When reviewing a trial court's decision in a Rule 600 case, an appellate court will reverse only if the trial court abused its discretion." ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012).

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after [a] hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review … is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> …
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …., courts must carefully factor into the ultimate equation not only the

---

[5] We note that Appellant has failed to cite any legal authority in support of his claim, and that this Court has long recognized that we will not consider issues where Appellant fails to cite to any legal authority or otherwise develop the issue. ***Commonwealth v. McLaurin***, 45 A.3d 1131, 1139 (Pa. Super. 2012), *appeal denied*, 65 A.3d 413 (Pa. 2013); Pa.R.A.P. 2119. Nevertheless, because we can discern the basis of Appellant's Rule 600 claim, we decline to find waiver on this basis.

> prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134 (Pa. Super. 2011) (*en banc*), *affirmed*, 44 A.3d 655 (Pa. 2012) (citations omitted).

Relative to his sub-issue concerning the timing of the trial court's ruling on his Rule 600 motion, Appellant claims the trial court erred in waiting to make a determination only after the charge to the jury was completed. Appellant's Brief at 12. We note that the provisions of Rule 600 do not address the timing of a trial court's determination of a motion brought under the Rule. *See generally* Pa.R.Crim.P. 600. We also note that Appellant makes no averment that he was in any way prejudiced by the timing of the trial court's disposition of the motion. In any event, the trial court notes in its Rule 1925(a) opinion that the timing of its ruling was occasioned by the late submissions made to it by the parties, containing their respective claims of excludable and includable time in the Rule 600 calculation, and by the need for judicial efficiency. Trial Court Opinion, 9/25/13, at 8-9, n.45. Accordingly, we discern no abuse of discretion by the trial court in the timing of its disposition of Appellant's Rule 600 motion.

Proceeding to Appellant's claim that the trial court erred in denying his Rule 600 motion, we recognize that the courts of this Commonwealth employ a three-step analysis to determine whether Rule 600 requires dismissal of the charges against a defendant.

> The first step in determining whether a technical violation of Rule 600 […] has occurred is to calculate the "mechanical run date." The mechanical run date is the date by which trial must commence under the relevant procedural rule. [T]he mechanical run date is ascertained by counting the number of days from the triggering event - e.g., the date on which … the criminal complaint was filed - to the date on which trial must commence under Rule [600]. Pa.R.Crim.P. [600(A)(3)].

*Commonwealth v. Preston*, 904 A.2d 1, 11 (Pa. Super. 2006) (internal citations omitted), *appeal denied*, 916 A.2d 632 (Pa. 2007). In the second step, we must "determine whether any excludable time exists pursuant to Rule 600(C)." *Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. Super. 2007), *appeal denied*, 948 A.2d 803 (Pa. 2008). Then, in the third step, "[w]e add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date." *Id.*

It is well settled that any delay occasioned by a defendant is excludable time in the calculation of the adjusted run date. Pa.R.Crim.P. 600(C)(2), (3); *Preston*, *supra*. Furthermore, delays not attributable to a defendant but where the Commonwealth is found to have acted with due diligence in attempting to commence a timely trial but was prevented by circumstances beyond its control, is also considered excludable time. Pa.R.Crim.P. 600(G); *accord Commonwealth v. Wholaver*, 989 A.2d 883, 899 (Pa. 2010), *cert. denied*, *Wholaver v. Pennsylvania*, 131 S. Ct. 332 (2010). Any time prior to trial, a defendant may move the trial court for

dismissal of the charges if the Commonwealth has violated the Rule. Pa.R.Crim.P. 600(G).

Applying the foregoing analysis to the facts of this case, we note that the criminal complaint was filed on March 5, 2010, establishing March 5, 2011 as the mechanical run date under Rule 600 for the commencement of trial. Based on the "Speedy Trial Calculation Sheets" submitted by both the Commonwealth and Appellant, the parties agreed that two periods, totaling 179 days were excludable as delays requested by Appellant.[6]  **See** Trial Court Opinion, 9/25/13, at 8, n.45, Appendix B.  The trial court ruled that two more disputed periods totaling 262 days were excludable as being beyond the Commonwealth's control and as a judicial continuance, respectively.[7]  **Id.** at 6-7, n.42.  Appellant has not challenged those aspects of the trial court's ruling in this appeal.  At the time the parties submitted their calculation sheets, trial was scheduled to commence on August 20, 2012.  During the pendency of Appellant's motion, Appellant requested two one-day continuances, to review the status of a possible plea, on August 20 and 21 respectively.  Consequently, these two days are excludable and the

_____

[6] These periods included defense-requested continuances for November 17, 2010, to December 1, 2010, and for March 8, 2012, to August 20, 2012. Trial Court Opinion, 9/25/13, Appendix B.

[7] These periods included a Commonwealth request for a continuance due to the unavailability of a witness in federal custody for August 17, 2010, to September 21, 2010, and a continuance ordered by the trial court due to its own unavailability for July 25, 2011 to March 8, 2012.  Trial Court Opinion, 9/25/13, Appendix B.

adjusted run date based only on these now uncontested exclusions would be May 21, 2012. Relevant to this appeal, the trial court also excluded a period of 95 days, being the time between the filing of the criminal complaint and Appellant's arrest, establishing an adjusted run date of August 24, 2012. Accordingly, if the trial court was correct to exclude the 95 days preceding Appellant's arrest, then the trial, commencing on August 22, 2012, was within the requirements of Rule 600. *See Ramos*, *supra*.

As noted, Appellant confines his argument to the trial court's exclusion of the period between March 5, 2010, when the criminal complaint was filed and Commonwealth issued a warrant for Appellant's arrest, and June 8, 2010, when Appellant was arrested at SCI Greene. Appellant's Brief at 11. Relative to the period between the filing of a criminal complaint and the arrest of a defendant, Rule 600 provides as follows.

> **Rule 600.  Prompt Trial**
>
> …
>
> (C) In determining the period for commencement of trial, there shall be excluded therefrom:
>
> (1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;
>
> …

Pa.R.Crim.P. 600(C)(1).

During argument on Appellant's Rule 600 motion, defense counsel contended that from March 5 to June 8, 2010 the Commonwealth should have known where Appellant was, and therefore that period of 95 days should be counted against the Commonwealth. N.T., 8/27/12, at 82. The Commonwealth acknowledged that the criminal complaint was filed on March 5, 2010, but proceeded to place into evidence documentation supporting its due diligence in locating and procuring Appellant during the period leading up to June 8, 2010, when Appellant was finally arrested. *Id.* at 84-96. The trial court aptly summarizes the Commonwealth's efforts in its Rule 1925(a) opinion, as follows.

> First, the Commonwealth attempted to arrest [] Appellant in March 2010 by sending officers to various locations Appellant frequented. Second, the Commonwealth conducted a custody check and discovered that Appellant was in State Prison at SCI Greene. Third, after locating [] Appellant, the Commonwealth faxed a bring down request and a copy of Appellant's arrest warrant to prison officers at SCI Greene. Fourth, when the prison failed to respond, the Commonwealth made additional requests on May 4, 2010, May 21, 2010, and June 2, 2010. Finally, the Commonwealth paid approximately $2[,]000[.00] to have private contractors transport Appellant to Philadelphia. On June 8, 2010, [] Appellant arrived in Philadelphia. Upon his arrival, the Commonwealth immediately arrested [] Appellant and held him for trial.

Trial Court Opinion, 9/25/13, at 7 (footnotes omitted); *see also* N.T., 8/27/12, at 92-96.

- 12 -

This Court has held that the Commonwealth exercises "due diligence by utilizing the traditional writ system." *Commonwealth v. Jefferson*, 741 A.2d 222, 224 (Pa. Super. 1999), *appeal denied*, 758 A.2d 1196 (Pa. 2000). The *Jefferson* Court further held that the circumstances in *Jefferson* were beyond the control of the Commonwealth because in *Commonwealth v. Nellom*, 565 A.2d 770 (Pa. Super. 1989), "we stated clearly that a delay resulting from a failure to bring down a defendant despite a writ was not attributable to the Commonwealth." *Jefferson*, *supra*. In the instant matter, the Commonwealth entered several exhibits, including Appellant's arrest warrant and the writ signed by the Honorable Rayford Means to bring Appellant down to be arrested. N.T., 8/27/12, at 91-92. These exhibits support the trial court's finding that the Commonwealth exercised due diligence in locating and securing Appellant for arrest, but was prevented first by Appellant's unknown whereabouts and then by circumstances beyond its control when the issuing court's writs were ignored. *See* Pa.R.Crim.P. 600(C)(1), and (G). Therefore, the 95 days preceding Appellant's arrest is excludable time under Rule 600, and Appellant was brought to trial before the adjusted run date. Accordingly, we conclude the trial court did not abuse its discretion in denying Appellant's Rule 600(G) motion. *See Bradford*, *supra*.

Finally, in his third issue, Appellant argues the trial court erred in allowing Ruth Anne Dennison, the Complainant's mother, to testify, over

- 13 -

Appellant's objection, "about statements she overheard the [C]omplainant make during a telephone conversation." Appellant's Brief at 13.[8] Specifically, Appellant argues Dennison's testimony that she "overheard her son say 'his name was Scar Face Kev' is hearsay and should not have been admitted into the trial and that by doing so was more prejudicial than probative." *Id.* Further, Appellant asserts, Dennison's testimony was "not evidence of a prior consistent statement," that would constitute an exception to the prohibition against hearsay as relied on by the trial court. *Id.* Accordingly, Appellant asserts the trial court abused its discretion "warranting a remedy of the reversal of [his] conviction and a new trial granted." *Id.*

In considering this issue, we are guided by the following principles.

> The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Mendez*, 74 A.3d 256, 260 (Pa. Super. 2013) (citation omitted), *appeal denied*, 87 A.3d 319 (Pa. 2014). In order to be entitled to

_____

[8] We again note with disfavor that Appellant has failed to adequately develop this claim in his appellate brief, and therefore a finding of waiver would not be improper. *McLaurin*, *supra*; Pa.R.A.P. 2119. Notwithstanding, as with Appellant's second issue, we decline to find waiver on this basis.

relief based on a showing of a clear abuse of discretion in an evidentiary ruling, actual resulting prejudice must be established. ***Commonwealth v. O'Black***, 897 A.2d 1234, 1240 (Pa. Super. 2006) (citation omitted).

The subject testimony, elicited on direct examination of Dennison by the Commonwealth, is as follows.

> **Q.** And [] when people were looking for [Complainant], how much time had passed between the time he had been shot and the people were coming around looking for him?
>
> **A.** I would say about a month and a half.
>
> **Q.** Okay.
>
> Now at any point when [Complainant] got home and was staying with you did you hear him talking about the circumstances of getting shot?
>
> **A.** Yes.
>
> I asked [Complainant], while he was in the hospital, who shot him. And he said, I don't know.
>
> So I said, Okay.
>
> But in the process after he came home, I overheard his conversation, and he said that the guy - -
>
> [**Defense Counsel**]: Objection. Move to strike.
>
> [**The Commonwealth**]: Your Honor, if we may see you at sidebar, briefly.
>
> **The Court**: Okay.
>
> ---

- 15 -

(There was a brief sidebar discussion held off the record).

---

[**The Commonwealth**]:    May I proceed?

**The Court**:    Yes.

**Q.**    Ms. Dennison, when you were talking about a conversation you heard, can you please tell the ladies and gentlemen of the jury what you heard?

**A.**    Well, what I heard, I also questioned him about it.

**Q.**    Start off with what you heard.

**A.**    I heard him tell someone over the phone that when the bull came to his car, he asked him for his jewelry.

**The Court**:    Did he have a statement of identification, ma'am?

**The Witness**:    Yes.

**The Court**:    Just indicate what he said.

**The Witness**:    He said that the person told him my name is Scar Face Kev, and shot him.

**Q.**    And you said you questioned him about it.

Did you have a conversation about what you had heard?

**A.**    Yeah, I asked him about it.

I said, I overheard you talking about this person.  I said, who is that?

He said it's just - -

[**Defense Counsel**]: Objection. Move to strike.

**The Court**: Sustained.

**Q.** Okay.
But did you discuss with him what he had said about Scar Face Kev?

[**Defense Counsel**]: Objection.

Asked and answered.

**The Court**: It's allowed.

**Q.** Did you then have a conversation with [Appellant], your son, about Scar Face Kev shooting him?

**A.** Yes.

N.T., 8/24/12, at 10-13.[9]

The Commonwealth sought the foregoing testimony as evidence of a prior consistent statement made by Complainant about the identity of the person who shot him. Trial Court Opinion, 9/25/13, at 10. The trial court permitted Dennison's testimony on this basis, and subsequently resolved to

_____

[9] Our Rules of Evidence provide that a claim of trial court error cannot be predicated on admission of evidence, absent a timely objection or motion asserting specific grounds for inadmissibility unless that ground is apparent from the context. Pa.R.E. 103(a)(1)(A), (B). As the sidebar following Appellant's initial objection was off the record, the specific grounds for the objection have not been stated. Nevertheless, we conclude the hearsay aspect of Appellant's objection is apparent from the context, especially in light of the later discussion between defense counsel and the trial court about its cautionary charge respecting the testimony. Accordingly, we conclude Appellant's contemporaneous objection has preserved his issue on appeal.

J-S47008-14

provide a cautionary instruction to the jury regarding the limited purpose for which the jury could consider the testimony.

> **The Court**: …
>
> The only other issue that will be outstanding is during the lunch break you have to make a decision on how you want to handle the hearsay objection.
>
> [**Defense Counsel**]: I think a curative instruction is appropriate.
>
> **The Court**: So we'll go over that. I'll tell you what I have. And if you wish edit [sic] it or tweak it, we can reach a mutual agreement. Otherwise I'll use what I have.
>
> [**Defense Counsel**]: Fine.

N.T., 8/27/12, at 61.

Accordingly, the trial court gave the jury the following special instruction relative to Dennison's testimony.

> The next charge I'm giving you is a cautionary instruction, and I want you to pay attention to it very carefully.
>
> Under the doctrine of limited admissibility[,] evidence can be permissible for one purpose but inadmissible for another purpose. You heard testimony from the complainant, Terrence Savage's mother, Ruth Anne Dennison, in which she testified that she overheard her son Terrence Savage, speaking to an unknown individual on the phone. She further testified that she overheard her son say on the phone that Scar Face Kev shot him, meaning Terrence. You are to totally disregard this portion of Ms. Dennison's testimony because it is hearsay and it's inadmissible evidence. However, you may consider Ms. Dennison's testimony that Terrence

- 18 -

> Savage, her son, told Ms. Dennison directly after this phone conversation that Scar Face Kev shot me.
>
> Now this testimony was offered by the Commonwealth, not for the truth of the [sic] Ms. Dennison's testimony or for the truth of what Terrence Savage, the son, said to Ms. Dennison about who shot him. Rather, this portion of Ms. Dennison's testimony was allowed to show that Terrence Savage allegedly identified [Appellant] as the shooter before Terrence Savage himself was involved with the feds or was federally indicted for his own criminal cases.

N.T., 8/27/12, at 125-126.

Our Rules of Evidence outline the set of circumstances that are a prerequisite to the admissibility of prior consistent statements.

### Rule 613. Prior statements of witnesses

> …
>
> **(c) Evidence of prior consistent statement of witness.** Evidence of a prior consistent statement by a witness is admissible for rehabilitation purposes if the opposing party is given an opportunity to cross-examine the witness about the statement, and the statement is offered to rebut an express or implied charge of:
>
> (1) fabrication, bias, improper influence or motive, or faulty memory and the statement was made before that which has been charged existed or arose; []
>
> …

Pa.R.E. 613(c)(1). "The comment to this rule relevantly provides that 'under Pa.R.E. 613(c), a prior consistent statement is always received for rehabilitation purposes only and not as substantive evidence.'"

*Commonwealth v. Handfield*, 34 A.3d 187, 208 (Pa. Super. 2011) (citation omitted), *appeal denied*, 54 A.3d 347 (Pa. 2012). "A prior consistent statement is admissible only if it is made before the declarant has a motive to fabricate." *Id.* (citations omitted).

The trial court explained the circumstances pertaining to the admission of Dennison's testimony as follows.

> At trial, the Complainant testified that the Appellant robbed and shot him. During cross-examination, the Appellant's counsel elicited information that the Complainant (Savage) was federally indicted and was "cooperating with federal officials by identifying the Appellant as the person who had shot him. Counsel also brought out on cross-examination that the Complainant was facing a federal sentence of 37 years to life, and that if he testified favorably for the government, the Complainant could receive a mitigated federal sentence. Hence, it was through cross-examination that Appellant's counsel indirectly or impliedly attacked the truthfulness of Complainant's identification. In fairness to the Commonwealth, the court allowed Dennison's testimony to establish that the Complainant had made a prior consistent statement identifying the Appellant prior to his being federally indicted.

Trial Court Opinion, 9/25/13, at 11 (citation to record omitted).

We conclude the record supports the trial court's findings. Thus, the Commonwealth was permitted to support the credibility of Complainant from Appellant's implied attack, questioning Complainant's identification of Appellant as being motivated to gain favor from federal authorities, with Complainant's prior consistent identification made before Complainant faced

federal indictment. *See* Pa.R.E. 613(c)(1); **Handfield**, **supra**. Additionally, Appellant was afforded full opportunity to cross-examine Dennison and the trial court gave a pertinent special instruction to the jury, defining the limited relevance of the testimony, to which Appellant offered no objection. In light of these circumstances, we discern no abuse of discretion by the trial court in permitting Dennison's testimony about Complainant's prior consistent statements identifying Appellant as his assailant. Thus, Appellant's final issue affords him no relief.

Based on all the foregoing, we conclude Appellant's claims are either waived or devoid of merit. Accordingly, we affirm the November 16, 2012 judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>9/22/2014</u>