J-A24005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTORIA M. SLAUGHTER | : | No. 67 MDA 2025 |

Appeal from the Order Entered December 5, 2024
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004318-2023

BEFORE: DUBOW, J., KUNSELMAN, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED DECEMBER 02, 2025**

The Commonwealth appeals from the order entered by the York County Court of Common Pleas dismissing criminal charges against appellee Victoria M. Slaughter ("Slaughter") for violations of her rule-based right to a speedy trial. Finding support for the trial court's determination that the Commonwealth failed to present sufficient evidence of its due diligence, we affirm.

As the factual allegations are immaterial to the issue presented, we limit our discussion to the pertinent procedural history. On June 28, 2023, the Commonwealth charged Slaughter with one count each of terroristic threats, simple assault, and criminal mischief. On December 11, 2023, the parties appeared for a "Plea Court" hearing. Slaughter informed the court that she intended to go to trial and would "be available at the first available [date] of January, if it is still open." N.T., 12/11/2023, at 1. On November 25, 2024,

Slaughter filed a motion to dismiss alleging a violation of Rule 600, which establishes the general rule that the Commonwealth must bring a defendant to trial within one year of the filing date.

The trial court held a hearing on December 5, 2024, with the Commonwealth calling three employees to support its position that Rule 600 was not violated because the victim, Alecia King ("Victim"), had enlisted in the military and was therefore unavailable for trial. Jessica Gumerlock ("Gumerlock"), the deputy administrator of trial management for the York County District Attorney's Office, testified that her department generates a monthly trial list of "any case that could essentially go to trial." N.T., 12/5/2024, at 25-26. This list typically contains approximately 3,000 cases, including cases that have yet to receive a pretrial date. *Id.* at 26, 33.

This initial case list is sent to the office prosecutors, who "go through and … mark cases that they believe are ready for trial." *Id.* at 26. Once a case is "listed for trial or marked ready, then victim[-]witness coordinators begin making contact with … witnesses." *Id.* Gumerlock does not work with those employees, but the attorneys do. *Id.* at 37. Gumerlock then "put[s] together the prioritized list … tak[ing] into account all the unavailability that's given to me." *Id.* at 27. She roughly selects all cases that have six months or less remaining for Rule 600 purposes and lists those cases on a weekly basis for the month.

Slaughter's case was not included on the trial list for March, April, or May, 2024, but the assistant district attorney marked the case as ready for

trial for those months.[1]  The case was listed for June "but it had to be removed due to unavailability."  ***Id.*** at 30.  The case was "marked not ready in July by the prosecutor who was handling the case at the time."  ***Id.***  On July 31, 2024, Slaughter requested a postponement and, per that request, Slaughter's case was not relisted until September 23, 2024.[2]  The case was listed for October lists, "but it was removed due to unavailability."  ***Id.*** at 31.

Susana Martinez ("Martinez") was York County's victim-witness coordinator until "a few months" before the Rule 600 hearing.  ***Id.*** at 6. Martinez had contact with Victim in February, 2024, but from that point on she spoke only with Victim's mother, who told Martinez that Victim had enlisted in the military and was "therefore unavailable for this case and trial in the near future.  And [the mother] did not have any additional information as to when [Victim] would be available."  ***Id.*** at 9.  Martinez did not otherwise seek to confirm Victim's military status or her availability for trial.  She did, however, speak with Victim's mother later that summer.  Since Victim's mother had indicated in March that basic training would take approximately three months followed by "maybe some additional time for some additional

---

[1]  Gumerlock testified that the prosecutors do not consider witness availability when marking the case ready for trial.  N.T., 12/5/2024, at 35.

[2]  Gumerlock testified that the case was listed for the weeks of September 23 and September 30, but did not specifically state that it was removed because of the victim's unavailability.

training," Martinez reached out in July, 2024 to see "when [Victim] was possibly going to be available next." *Id.* at 14.[3]

Sometime in July or August, Megan Pace ("Pace") took over as the victim-witness coordinator for this case. *See id.* at 18. Pace learned from Victim's mother "[t]hat [V]ictim was still in basic training and they had no future date about when [she] would be available." *Id.* at 20. The parties stipulated that the last contact with Victim's mother was November 21, 2024. *Id.* at 24.[4]

The trial court granted the motion to dismiss the charges at the conclusion of the hearing. Although the trial court implicitly credited the testimony that Victim had enlisted in the military, the trial court found that this "does not mean they have fallen off the face of the earth. Even when we were actively involved in the war in Iraq, people who were stationed overseas in active duty in a war zone were available by email." *Id.* at 46. The court observed that the Commonwealth made "no attempt to provide documentation, updated contact information, a unit, an assignment, a location for [V]ictim in this case from February to today." *Id.* at 47. The Commonwealth's failure to obtain any kind of documentation or confirmation regarding Victim's availability meant that the case could still not be given a trial date.

---

[3] Martinez was not asked to disclose what Victim's mother said in July.

[4] Victim's mother did not testify.

And while there may have been some limitations during basic training, the Commonwealth has not proven that that person was unavailable to be contacted throughout that time period. And, in fact, it's inconceivable that through contacts with the mother, more information regarding the location, specific contact, and/ or a subpoena … could not have been served during that time period for [V]ictim to be made available. And that's a little concerning. And at this point, [V]ictim is still MIA, so we can't really find that due diligence occurred.

***Id.***

The Commonwealth filed a timely notice of appeal and a concise statement as directed.[5] The Commonwealth presents one issue for our review:

Whether the trial court erred when it granted [Slaughter]'s Rule 600 motion because it found that the Commonwealth did not exercise due diligence when it relied on the representations of [V]ictim's mother that [V]ictim was unavailable for trial because she was away at basic training for the Army?

Commonwealth's Brief at 4.

"We generally review the trial court's disposition of a Rule 600 motion for an abuse of discretion." ***Commonwealth v. Williams***, 342 A.3d 742, 759 (Pa. Super. 2025) (citation omitted). Our "scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." ***Commonwealth v. Womack***, 315 A.3d

---

[5] We have jurisdiction as the Commonwealth certified in its notice of appeal that the order terminates or substantially handicaps the prosecution. ***See*** Pa.R.A.P. 311(d).

- 5 -

1229, 1237 (Pa. 2024) (quoting *Commonwealth v. Wholaver*, 989 A.2d 883, 899 (Pa. 2010)).

Rule 600 "has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases." *Commonwealth v. Bradford*, 46 A.3d 693, 701 (Pa. 2012) (citation omitted). It protects the defendant by "provid[ing] for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint … subject to certain exclusions for delays attributable to the defendant." *Id.* The rule safeguards societal interests in prosecuting crimes by authorizing extensions of the one-year period if the Commonwealth acted with due diligence. *Id.* Rule 600 "expressly calls upon a trial court to assess the Commonwealth's due diligence throughout the life of a case, when faced with a claim that the Commonwealth violated a defendant's speedy trial rights." *Commonwealth v. Harth*, 252 A.3d 600, 617 (Pa. 2021).

The Commonwealth bears the burden to establish it acted with due diligence. *Id.* at 618. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis." *Commonwealth v. Aaron*, 804 A.2d 39, 43 (Pa. Super. 2002) (citation omitted). It "does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Williams*, 342 A.3d at 761.

The first step in our analysis is calculating the adjusted run date.

In a Rule 600 analysis, the "mechanical run date" is 365 days after the complaint was filed. The "adjusted run date" is then calculated by adding any time that is "excluded from the computation" under Rule 600(C)(1). If a defendant is not brought to trial by the adjusted run date, the case is dismissed.

***Commonwealth v. Rice***, 331 A.3d 5, 9 (Pa. Super. 2025) (citation omitted).

The Commonwealth stipulated to the adjusted run date calculated by Slaughter in her motion to dismiss. N.T., 12/5/2024, at 3; Commonwealth's Brief at 5 (acknowledging stipulation). According to those calculations, the adjusted run date was August 24, 2024.[6]

The Commonwealth argues that all periods of delay caused by Victim's unavailability should be excused and the case should remain open for prosecution once Victim becomes available.[7] The law is clear that "when a witness becomes unavailable towards the end of the Rule [600] run date—due to illness, vacation, or other reason not within the Commonwealth's control,

---

[6] Slaughter's calculations include each day from when the complaint was filed on June 28, 2023, through her postponement request submitted on July 29, 2024. ***See generally Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017) (holding that "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600"). Slaughter conceded that the fifty-seven day delay postponement of trial at her request is not included in the Rule 600 calculation. The August 24, 2024, date results from adding those fifty-seven days to the mechanical run date. August 24, 2024, however, was a Saturday, making the adjusted run date Monday, August 27, 2024. ***See*** 1 Pa.C.S. § 1908 (addressing computation of time).

[7] The Commonwealth argues that Rule 600 should effectively be open ended in this case as a result of the uncertainty surrounding Victim's whereabouts. ***See*** N.T., 12/5/2024, at 45 ("[T]here's been no definitive end date, so the Commonwealth has to keep bringing it back in the hopes and chance that the victim will be done with here [sic] training and available.").

the Commonwealth is prevented from commencing the trial within the requisite period despite due diligence, and an extension of time is warranted." ***Commonwealth v. Corbin***, 568 A.2d 635, 638 (Pa. Super. 1990) (quoting ***Commonwealth v. Weaver***, 525 A.2d 785, 788 (Pa. Super. 1987)). Applying those principles here, the Commonwealth asserts:

> On this record, the question presented is whether the Commonwealth exercised due diligence through its repeated contacts with [V]ictim's mother and reliance on her representations that [V]ictim was still in basic training. Any answer other than a resounding yes denies a member of the military justice because of her military commitments.

Commonwealth's Brief at 13.

There is a disconnect between the accusation that affirming the trial court's order will punish a member of our military[8] and the Commonwealth's legal position that it was entitled to rely on "**representations** that [V]ictim was still in basic training." ***Id.*** (emphasis added). The Commonwealth's argument appears to be that once a witness enlists in the military, s/he is presumptively unavailable, and the Commonwealth can rely wholesale on communications with the witness' parent as to his or her whereabouts and availability.

---

[8] The Commonwealth argues that "the trial court held against the Commonwealth and the victim that she dared to enlist in the military before her case had gone to trial." Commonwealth's Brief at 11. This accusation is unfounded. The trial court held only that the Commonwealth was required to offer some evidence to show that Victim was completely unavailable to appear for the roughly ten months in which she may or may not have been in training.

Slaughter responds that the Commonwealth's burden entailed establishing as a fact that Victim enlisted in the military and emphasizes the Commonwealth's concession at the Rule 600 hearing that it did not seek to do so. Slaughter's Brief at 13. Slaughter argues that the Commonwealth's positions are irreconcilable since it "conced[es] that the mother's statements offer no proof that the alleged victim was indeed unavailable while simultaneously arguing that it acted with due diligence by relying on those statements." *Id.* at 14.

We agree with Slaughter that, for purposes of the fact-specific inquiry tailored to the circumstances of this individual case, the Commonwealth needed to present proof that Victim was both enlisted in the military and unavailable for trial because of that enlistment. In so holding we are guided by *Commonwealth v. Hollingsworth*, 499 A.2d 381 (Pa. Super. 1985) (en banc). In that case, trial was scheduled for May 11, 1981, the day the run date pursuant to the predecessor to Rule 600 was set to expire. On April 9, 1981, the Commonwealth filed an application for a continuance, and the trial court set a hearing for the day of trial. At that hearing, the Commonwealth amended its request to include a claim of witness unavailability, saying its "expert witness will be unavailable for a period of [two] weeks due to his attendance at Drug Enforcement School sponsored by the Department of Justice." *Id.* at 383. Hollingsworth objected, arguing that "a mere assertion that due diligence was exercised is insufficient to allow for the granting of

extension of time." *Id.* at 384. Neither side presented evidence, and the trial court granted the extension.

On appeal, we concluded that the trial court did not abuse its discretion. Notably, we held that the Commonwealth was not required to offer evidence that the witness was unavailable where the defendant simply denied in general terms that the Commonwealth had failed to exercise due diligence.

> In determining that [Hollingsworth] never sought to challenge the veracity of the Commonwealth's crucial allegations, we have relied principally on the fact that [Hollingsworth] did not at the Rule [600] hearing—and she does not now—maintain that the reasons given for Sergeant Conway's absence were spurious, or that he was in fact available for trial. Rather, her opposition to the extension request then and now amounts to nothing more than a general denial that due diligence was exercised. In effect, she has chosen to meet the Commonwealth's concrete offer of proof with a "bald assertion" of her own. Defense counsel's statement at the extension hearing—that "a mere assertion that due diligence was exercised is insufficient to allow for the granting of extension of time"—may be sound as an abstract proposition of law, but it was completely inadequate to inform the court or prosecutor that the defendant was contesting the Commonwealth's specific factual allegations. Indeed, the statement was no more helpful in framing the factual issues before the court than if counsel had simply announced that the court could not grant a[n] … extension in the absence of due diligence on the part of the prosecution.

*Id.* at 388.

The Court went on to say that "[i]f Hollingsworth seriously wished to test the truth or accuracy of the Commonwealth's specific assertion that Sergeant Conway was unavailable owing to his attendance at drug school, then she promptly should have demanded proof and put the district attorney on notice that that fact was indeed in dispute." *Id.* at 388-89.

- 10 -

Here, unlike **Hollingsworth**, Slaughter directly "demanded proof" that Victim enlisted in the military and was unavailable as a result. On cross-examination of Martinez, Slaughter asked for "supporting documentation to confirm what you're telling me and telling the [c]ourt this morning[.]" N.T., 12/5/2024, at 11. Similarly, on cross-examination of Pace, Slaughter asked if she "request[ed] documentation" from the Army or Victim's mother to prove Victim's participation in basic training and unavailability. **Id.** at 21. Additionally, Slaughter consistently objected on hearsay grounds to the Commonwealth's questions regarding what Victim's mother said, **see id.** at 7, 9, 18, and focused on this point during argument:

> Based upon the victim[-]witness [coordinator] testimony, which the defense still maintains is hearsay and not supported by anything other than statements of a non-present witness, there is nothing that has been offered into evidence or was even attempted to be obtained by the Commonwealth that substantiates allegations made by a third-party with no particularized knowledge, with no documentation, with no supporting evidence to sustain these claims that the alleged victim is in the military.
>
> *        *        *
>
> A reasonable effort in this case would have been reaching out to a branch of the military. A reasonable effort would have been getting some type of documentation or proof that Ms. Slaughter [sic] even entered the military. We don't even have proof that she enlisted.

N.T., 12/5/2024, at 41-42.[9]

_____

[9] We note that Slaughter did not make this demand in her motion to dismiss. However, we decline to find that omission dispositive as the issue was

*(Footnote Continued Next Page)*

The Commonwealth did not ask the trial court to continue the hearing to obtain the requested proof. Instead, it was the Commonwealth's view that it had no obligation to present this evidence at all. *See, e.g., id.* at 9 ("We are not here to try to prove [V]ictim, in fact, joined the military."). By its own admission, the Commonwealth presented no substantive evidence that Victim was unavailable. In response to hearsay objections, the Commonwealth disclaimed that it was presenting the mother's statements to the Commonwealth witnesses "to prove the truth of the matter asserted," i.e., that Victim was, in fact, enlisted in the Army and unavailable because of military training. *Id.* at 18. Instead, the mother's statements were presented "just for the effect on the listener for the Commonwealth to show due diligence based on the information it had bringing this case to trial." *Id.* In the Commonwealth's view, it could purely rely on hearsay testimony reciting the reports of Victim's mother:

> The Commonwealth was made aware that [V]ictim was in Army training. We were never given a definitive end date, just that she was unavailable and still in training.
>
> &ast; &ast; &ast;
>
> And the communications we've had is just that she's in training and unavailable. And there's been no definitive end date, so the Commonwealth has to keep bringing it back in the hopes

---

repeatedly raised during the Rule 600 hearing in conjunction with the hearsay objections. The Commonwealth did not contend it was alleviated of its burden of proof on this basis, nor did it ask to continue the hearing to obtain that proof. Instead, as discussed below, it insisted that it did not need to prove the fact as a matter of law.

and chance that [V]ictim will be done with here [sic] training and available. We have essentially been given an indefinite amount of time now as to when that will happen. We don't have a victim. The information we have is that she is unavailable. I don't think it's the Commonwealth's -- I don't think any of the case law would support the due diligence requirement to call the secretary of defense here as to testify to a specific soldier and whether or not they're actually enlisted, Your Honor.

*Id.* at 44-45.

The Commonwealth equates a witness' reported absence from the jurisdiction with an unassailable finding of unavailability. This simply is not the law. Even accepting, arguendo, that the Commonwealth could rely on Victim's mother's word that Victim had enlisted in the military, the Commonwealth failed to show that Victim was unavailable to appear for trial at any point between February and the date of the hearing. And even if we were to accept the mother's reported assertion that Victim would not be released during basic training, the testimony was muddled (at best) as to when, if at all, Victim completed basic training. *See id.* at 39-40 (Martinez testifying that in March, Victim's mother said Victim would complete basic training in three months); *id.* at 10 (Martinez testifying that she was never informed Victim completed basic training); *id.* at 13-14 (Martinez testifying that after basic training Victim "maybe" would have "some additional training"). As the trial court aptly stated, enlistment into a branch of our armed forces does not mean that the person has "fallen off the face of the earth." *Id.* at 46. Again, by the Commonwealth's admission, none of this constituted substantive testimony that Victim was unavailable for trial.

Contrary to the Commonwealth's contentions, the Rule 600 decision was not made to punish Victim for entering the military, but to vindicate the rights of the defendant because of the Commonwealth's failure to put forth even a modicum of effort to establish Victim's unavailability. As the Commonwealth conceded at the hearing, it did not establish that Victim was even enlisted in the Army, let alone that she was unavailable for trial. *See* N.T., 12/5/2024 at 9, 18; *see also id.* at 40 (in response to the question of whether Martinez was "going solely based upon the statements of the complainant's mother," she responded: "Yes").

On this note, we add that the Commonwealth failed to alert the trial court or Slaughter to the need to reschedule trial because Victim was unavailable. This would pose no problem if the Rule 600 deadline was not imminent. The Commonwealth stipulated, however, that all time counted against Rule 600 until the defense requested a postponement on July 29, 2024. Thus, the run date had already expired on June 28, 2024. The text of Rule 600 presumes that the Commonwealth will seek judicial approval before deciding that a postponement is warranted. The relevant text states:

(C) Computation of Time

\* \* \*

(3)(a) When a judge or issuing authority grants or denies a continuance:

(i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and

- 14 -

> (ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(C)(3)(a).

The Commonwealth failed to follow this procedure. Had the Commonwealth sought a postponement based upon Victim's unavailability in June, the court could have pressed the Commonwealth for more information on when the case could proceed to trial. This also would have given Slaughter the opportunity to raise objections as to the Commonwealth's due diligence and make demands for proof of witness unavailability. During argument on the Rule 600 motion, Slaughter asserted that she "was not made aware that the alleged victim was unavailable for the purposes of trial until late September of 2024." N.T., 12/5/2024, at 43.

We therefore conclude that, under the unusual facts of this case, the Commonwealth failed to meet its burden of showing due diligence as it failed entirely to establish that Victim was unavailable for trial. The Commonwealth failed to obtain judicial approval for a postponement and then failed to offer any substantive evidence of Victim's military status at the Rule 600 hearing. Slaughter's demand for proof was reasonable given the extraordinary claim that Victim had been completely unavailable for over ten months and would remain unavailable for an indeterminate amount of time. The trial court

therefore did not abuse its discretion by dismissing the case pursuant to Rule 600.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 12/02/2025