J-S02039-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
BERWIN T. STONE :
:
Appellant : No. 88 EDA 2025

Appeal from the Judgment of Sentence Entered December 13, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003430-2022

BEFORE: NICHOLS, J., MURRAY, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.: **FILED APRIL 28, 2026**

Appellant, Berwin T. Stone, appeals *pro se* from the judgment of sentence imposed following his jury trial for aggravated assault and strangulation.[1] After careful review, we affirm.

The trial court set forth the facts of this case as follows:

> By January 2021, [Appellant] and I.R. [the victim] had been in a romantic relationship for over a year. On January 20, 2021, they made plans to meet at I.R.'s house in Philadelphia at 6:00 p.m. However, I.R. later decided that she did not want to meet with [Appellant] and stopped answering his phone calls. I.R. instead went out that night with her sister and returned to her home around 10:00 or 11:00 p.m. The only other people who lived in I.R.'s home at that time were I.R.'s brother and I.R.'s son, R.G., who was 11 years old.
>
> After I.R. went to sleep in her bedroom that night, she awoke to the sight of [Appellant] standing over her. I.R. was four feet and eight inches tall, while [Appellant] was five feet and ten

_____

[1] 18 Pa.C.S. §§ 2702(a)(1) and 2718(a), respectively. The jury also acquitted Appellant of rape, sexual assault, and burglary.

inches tall and weighed approximately 210 pounds. [Appellant] held I.R.'s phone in his hand and proceeded to yell at I.R. [Appellant] then pulled I.R. out of her bed and started fighting with her. As they tussled on the floor, [Appellant] began hitting I.R., and I.R., started to scream. [Appellant] tried to cover I.R.'s mouth and put his hands around her neck. While [Appellant's] hands were on I.R.'s neck, I.R. was unable to breathe. I.R. testified that [Appellant] beat her up and sexually assaulted her. [Appellant] choked I.R., punched her all over her face and body, and pulled her hair. [Appellant] also tossed I.R. around the room and threw objects at her, including a lamp.

Eventually, R.G. entered the room and asked if I.R. was okay. [Appellant] said everything was okay as he put a pillow over I.R.'s face to try to hide or wipe the blood from around her face. R.G. then left and shut the door, but when the fighting continued, R.G. came back into the room, at which point I.R. ran out of the room and down to the basement. [Appellant] said to R.G., "I'm sorry you have to see this but this is what happens when someone cheats on you." R.G. also heard [Appellant] say that I.R. was a "whore."

While in the basement, I.R. called 911. As I.R. waited for the police to arrive, she could hear [Appellant's] movements upstairs until [Appellant] left the house. After [Appellant] left, I.R. went back upstairs, just as police officers were arriving at the home. An ambulance transported I.R. to Temple Hospital. Medical records showed that I.R. was treated for injuries to her jaw, head, arms and chest. She reported her pain to be seven out of ten on a ten-point scale, including abdominal pain, spine tenderness, severe pain in her hand and wrist, facial pain, and left upper extremity pain. I.R. also reported blurry and double vision. She had a fractured jaw and was unable to open her jaw entirely. I.R. also had chest wall tenderness, swelling around the left eye, and subconjunctival hemorrhage on the left eye, with a shallow abrasion on the upper left lid. Photographs taken at PSARC[2] also show I.R.'s injuries. Due to the assault, I.R. remained out of work

_____

[2] This appears to be a reference to the Philadelphia Sexual Assault Response Center, which provides assistance with assessing and evaluating sexual assault victims in the area. *See* https://drexel.edu/cnhp/practices/psarc/, last accessed on 3/25/26.

- 2 -

for a month, and it took approximately four to five months for the injuries to her face and jaw to heal.

On January 28, 2021, Detective [Christopher] Brennan obtained an arrest warrant for [Appellant]. Police attempted to execute the warrant at [Appellant's] known addresses multiple times but could not locate him. Police eventually arrested [Appellant] on April 7, 2022, over 14 months after the issuance of the arrest warrant.

After the date of the assault, [Appellant] repeatedly contacted I.R. and told her to file a complaint about the detective involved in the investigation and to claim that I.R. was coerced by the detective to implicate [Appellant] in the assault. [Appellant] himself then emailed the Internal Affairs Department of the Philadelphia Police Department to file a complaint in I.R.'s name. After [Appellant] threatened I.R., I.R. falsely told a lieutenant from Internal Affairs over the telephone that the allegations against [Appellant] were untrue. [Appellant] sat next to I.R. during the telephone call and told I.R. what to say to Internal Affairs.

Trial Court Opinion ("TCO"), 2/18/25, at 2-5 (internal citations omitted).

The jury convicted Appellant as noted above. On November 8, 2024, Appellant appeared for sentencing but indicated that he wished to represent himself. Thus, the trial court conducted a hearing to determine whether Appellant's decision to waive his right to counsel was knowingly, intelligently, and voluntarily made. *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1988) (providing the procedure to follow when a defendant wishes to represent himself, and holding that the waiver should be accepted if knowingly, intelligently, and voluntarily made). Appellant was permitted to represent himself at sentencing with trial counsel acting in a standby capacity. On December 13, 2024, the trial court imposed an aggregate sentence of 7 to 14 years of incarceration.

While Appellant did not file post-sentence motions, he filed a *pro se* notice of appeal on December 19, 2024. In response, the trial court conducted a second hearing to determine whether Appellant wished to continue representing himself. On January 16, 2025, the court permitted Appellant to continue to proceed *pro se*. Appellant filed the court-requested statement of matters complained of on appeal on December 31, 2024. The trial court filed its opinion in this matter on February 8, 2025.

Appellant's *pro se* brief fails to follow our Rules of Appellate Procedure regarding the required content for appellate briefs. For example, Appellant's brief does not include copies of the trial court's opinion or his statement of errors, as required by Pa.R.A.P. 2111, or a statement of the case, including a "closely condensed chronological statement, in narrative form, of all the facts which are necessary…" as required by Pa.R.A.P. 2117. As a prefatory matter, we note that although this Court is willing to liberally construe the materials filed by a *pro se* litigant, Appellant's *pro se* status confers no special benefit upon him. **Commonwealth v. Lyons**, 833 A.2d 245, 251-52 (Pa. Super. 2003). *Pro se* litigants must comply with all procedural rules set forth in the Pennsylvania Rules of Court. **Id.** "Briefs must conform materially to the requirements of the Pennsylvania Rules of Appellate Procedure, and this Court may quash or dismiss an appeal if the defect in the brief is substantial." **Commonwealth v. Tchirkow**, 160 A.3d 798, 804 (Pa. Super. 2017)(citation omitted); Pa.R.A.P. 2101 (if the brief of the appellant fails to conform with the Rules of Appellate Procedure in all respects the appeal may be quashed if

the defects are substantial). As our review of Appellant's claims is not substantially hampered by the defects in his brief, we will not quash this appeal; however, we do find a number of Appellant's claims to be waived as discussed below.

Appellant has listed his issues as follows:

1. Convictions based on materially inconsistent and contradictory testimony;

2. Improper jury instructions;

3. Brady [*v. Maryland*, 373 U.S. 83 (1963)] violations regarding undisclosed Internal Affairs audio recordings;

4. Failure to properly consider and instruct the jury on self-defense;

5. Violations of Pa.R.Crim.P. 600; and

6. Errors in admitting and relying on inconsistent probable cause affidavits.

Appellant's Brief at unnumbered 3.[3] We consider these issues in order.

*Convictions based on contradictory testimony*

Appellant claims that I.R. and her son provided inconsistent and contradictory testimony in his case, making his convictions infirm. For example, Appellant points out that at one point in her testimony, I.R. stated that she ran into the basement wearing shorts and underwear, but later on,

_____

[3] We note that Appellant filed amended briefs with this Court on 8/11/25. However, these documents were filed past the filing deadline and without leave of court. Accordingly, we may not consider them in this appeal. **See** Pa.R.A.P. 2113(c) (noting that additional briefs may not be filed unless previously authorized by the Court). In any event, we stress that had we considered the contents of Appellant's amended briefs, it would not alter our disposition of this appeal.

she claimed that she was naked. Appellant baldly claims, without citation to authority or legal argument, that these inconsistencies destroy any credibility that the witnesses had, such that his convictions must be reversed. We disagree. It is well-settled that, when faced with inconsistencies in witness testimony, the fact-finder is free to believe all, some, or none of the evidence presented. *Commonwealth v. Sanchez*, 36 A.3d 24, 26-27 (Pa. 2011). "On appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility[.]" *Id.* Pointing out contradictions in witness testimony does not, in and of itself, mandate relief.

The heart of Appellant's claim, essentially, is that the evidence was insufficient to support his convictions.[4] Our standard of review for a claim challenging the sufficiency of the evidence is well-established:

> Because a determination of the sufficiency of the evidence presents a question of law, our standard of review is *de novo* and our scope of review is plenary. Further, we analyze this issue under the following guidelines:
>
> > When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable

---

[4] Due to the deficiencies in Appellant's brief, it is actually unclear whether he is challenging the sufficiency of the evidence to support his convictions, or is asserting that the guilty verdicts are against the weight of the evidence presented. However, as Appellant did not orally argue a weight of the evidence claim at trial or at sentencing, nor did he file a post-sentence motion, any challenge to the weight of the evidence has been waived. *See* Pa.R.Crim.P. 607 (requiring that a weight of the evidence challenge must be raised with the trial court in a motion for a new trial); *Commonwealth v. Juray*, 275 A.3d 1037, 1047 (Pa. Super. 2022) (stating that an appellant's failure to raise a weight claim with the trial court constitutes waiver of that claim). Thus, we will evaluate his claims as a challenge to the sufficiency of the evidence.

to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed.

*Commonwealth v. Henck*, 342 A.3d 726, 731–32 (Pa. Super. 2025) (internal citations and quotation marks omitted).

Appellant was convicted of aggravated assault. "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). "For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue." *Commonwealth v. Williamson*, 330 A.3d 407, 417 (Pa. Super.), *appeal denied*, 344 A.3d 740 (Pa. 2025), quoting *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007).

In the instant case, the trial court analyzed the sufficiency of the evidence for Appellant's aggravated assault conviction thusly:

Here, the evidence at trial was sufficient to show that I.R. suffered serious bodily injury. I.R.'s trial testimony established that [Appellant] pulled I.R. out of her bed and started fighting with her. I.R. testified that [Appellant] choked I.R., punched her all

over her face and body, and pulled her hair. She also testified that [Appellant] tossed her around the room and threw objects at her, including a lamp. Medical records and the testimony of I.R. established that I.R. was treated for injuries to her jaw, head, arms and chest. She reported her pain to be seven out of ten on a ten-point scale, including abdominal pain, spine tenderness, severe pain in her hand and wrist, facial pain, and left upper extremity pain. I.R. also had chest wall tenderness, swelling around the left eye, and subconjunctival hemorrhage on the left eye, with a shallow abrasion on the upper left lid.

Photographs showing I.R.'s injuries were also admitted at trial. She had a fractured jaw and was unable to open her jaw entirely. Due to the assault, I.R. remained out of work for a month, and it took approximately four to five months for the injuries to her face and jaw to heal. Because her injury resulted in the protracted loss or impairment of the function of a bodily member, it was within the scope of a "serious bodily injury."

Because I.R. actually suffered serious bodily injury, the Commonwealth was not required to prove specific intent. ***See Commonwealth v. Burton***, 2 A.3d 598, 602 (Pa. Super. 2010) (*en banc*) ("When a victim actually sustains serious bodily injury, the Commonwealth can, but does not necessarily have to, establish specific intent to cause such harm."). Where serious bodily injury is established, "the statute's intent requirement can be met if the defendant acts recklessly under circumstances manifesting an extreme indifference to human life." ***Id.*** Such intent may be inferred from the circumstances surrounding an attack. One relevant factor is whether the defendant was disproportionately larger or stronger than the victim. The evidence at trial established that [Appellant] was five feet and ten inches tall and weighed approximately 210 pounds, significantly larger than I.R., who was only four feet and eight inches tall. Under the totality of the circumstances, the evidence was sufficient to show that [Appellant] acted recklessly manifesting an extreme indifference to human life. …

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth presented sufficient evidence to convict [Appellant] of aggravated assault against I.R.

TCO at 10-12 (most citations omitted).

We agree with this analysis. During her trial testimony, I.R. related that Appellant appeared in her bedroom after she was asleep, pulled her to the floor by her arm, neck, head and hair, and repeatedly punched her while holding her down on the bedroom floor. N.T. Trial, Vol. 1, 8/21/24 at 62-76. Appellant's hands were around I.R.'s neck and she felt like she could not breathe and was about to die. *Id.* at 65. We have no hesitation in concluding that aggravated assault was established under these facts. *See Commonwealth v. Lawrence*, 960 A.2d 473 (Pa. Super. 2008) (finding sufficient evidence for aggravated assault where the victim was hit with a brick and a bottle and was left lying in a pool of her own blood).

Appellant was also convicted of strangulation under 18 Pa.C.S. § 2718(a)(1), which requires proof that Appellant "knowingly or intentionally impede[d] the breathing or circulation of the blood of another person by applying pressure to the throat or neck[.]" Sufficient evidence to support this conviction is proven by "[t]estimony of the victim that [Appellant] put pressure on her neck that caused difficulty breathing[.]" *Commonwealth v. Weitzel*, 304 A.3d 1219, 1225 (Pa. Super. 2023). As noted above, I.R. testified that she was unable to breathe at a certain point during this incident and felt like she was going to die. N.T. Vol 1 at 65. This testimony by the victim is sufficient to prove the elements of strangulation. *Weitzel, supra*. Thus, after review, we conclude that Appellant's first issue on appeal is wholly without merit.

*Improper Jury Instructions*

Appellant claims that the trial court erred when it failed to provide a jury instruction about self-defense. He also maintains that the jury instructions given did not properly instruct the jury on issues related to witness credibility or prior inconsistent statements. These claims are waived because Appellant did not object at the time the instructions were given. *See* N.T., 8/23/24 at 84-85 (trial court asking after instructing the jury, "Counsel, do any of you need to see me at sidebar with regard to the charge?" and counsel both replying, "No, Your Honor.").

It is well-established that when counsel fails to posit the appropriate objection to a jury instruction prior to the jury's retirement for deliberation, the underlying point is not preserved for appellate review and will be deemed waived on appeal. ***See Commonwealth v. Pressley***, 887 A.2d 220, 223 (Pa. 2005). In other words, an appellant's "failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal." ***Commonwealth v. Ramos***, 231 A.3d 955, 957 (Pa. Super. 2020). Appellant's challenges to the jury instructions given at his trial are waived and he will not garner relief on these claims.

***Brady*** *violations regarding undisclosed audio recordings*

The evidence at trial established that, after Appellant was arrested, he pressured the victim to file a complaint against the detective involved in the investigation with the Internal Affairs Department of the Philadelphia Police Department. Appellant went so far as to file a complaint in the victim's name

- 10 -

on his own accord. Appellant pressured I.R. to maintain that she had lied about Appellant's actions in an attempt to avoid any consequences. Appellant has maintained at various times during the litigation of his case that an audio recording was made of I.R.'s interview with Internal Affairs. *See* N.T., Status Hearing, 8/11/23, at 3-4. The Commonwealth maintains that such a recording does not exist. *Id.* After argument, the trial court held that, if the recording exists, the Commonwealth must turn it over to the defense. *Id.* at 7 ("if it does exist, they know that by law they have to pass it over. Okay?"). Nonetheless, no recording was turned over prior to trial and the Commonwealth continues to state that it does not exist. Without evidence that such a recording exists, there is no error here.

*Failure to Instruct on Self-Defense*

Appellant claims that the evidence presented, specifically his own testimony that, on the day in question, I.R. punched him first, threw things at him, and stabbed him during an argument about another woman, would support a finding of self-defense and that, accordingly, he was entitled to have the trial court instruct the jury on self-defense. *See* N.T. Vol 2, 8/22/24 at 133-35. Again, since Appellant failed to object to the instruction before the jury retired to deliberate he has waived any consideration of the issue. *Pressley, supra*. *See also* Pa.R.Crim.P. 647(C) ("No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.").

*Violations of Pa.R.Crim.P. 600*

Appellant has preserved this challenge through his pre-trial motion and by including the alleged error in his concise statement. The trial court herein has also addressed Appellant's claim. In his brief to this Court, Appellant maintains that he was incarcerated for 940 days prior to his trial, and that there were "0 legitimate exclusions" to extend the required time for conducting his trial. Appellant's Brief at unnumbered 16. Accordingly, Appellant asserts that his conviction must be overturned.

A trial court's decision regarding the dismissal of a case pursuant to Rule 600 will not be reversed on appeal absent an abuse of discretion. ***Commonwealth v. Bradford***, 46 A.3d 693, 700 (Pa. 2012). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will[,] … discretion is abused." ***Id.*** (citation omitted). The scope of our review is limited to the trial court's findings and the record evidence, viewed in the light most favorable to the Commonwealth as the prevailing party. ***Commonwealth v. Wholaver***, 989 A.2d 883, 899 (Pa. 2010).

Our Supreme Court has clarified the significance of Rule 600, as follows:

Rule 600 has the dual purpose of both protecting a defendant's constitutional speedy trial rights and protecting society's right to effective prosecution of criminal cases. To protect the defendant's speedy trial rights, Rule 600 ultimately provides for the dismissal of charges if the Commonwealth fails to bring the defendant to trial within 365 days of the filing of the complaint…, subject to certain exclusions for delays attributable to the defendant.

- 12 -

Conversely, to protect society's right to effective prosecution prior to dismissal of charges, Rule 600 requires the court to consider whether the Commonwealth exercised due diligence, and whether the circumstances occasioning the delay of trial were beyond the Commonwealth's control. **If the Commonwealth exercised due diligence and the delay was beyond the Commonwealth's control, the motion to dismiss shall be denied.** The Commonwealth, however, has the burden of demonstrating by a preponderance of the evidence that it exercised due diligence. As has been oft-stated, due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing [that] the Commonwealth has put forth a reasonable effort. **If, at any time, it is determined that the Commonwealth did not exercise due diligence, the court shall dismiss the charges and discharge the defendant.**

***Bradford***, 46 A.3d at 701-02 (cleaned up, emphasis added). ***See also***

***Commonwealth v. Johnson***, 289 A.3d 959, 982 (Pa. 2023) (reiterating that

dismissal is an appropriate remedy when the Commonwealth fails to exercise

due diligence).

Relevantly, Rule 600 provides, in pertinent part:

**(A) Commencement of Trial; Time for Trial**

***

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

***

**(C) Computation of time**

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time

- 13 -

> within which trial must commence. Any other periods of delay shall be excluded from the computation.

> \*\*\*

> **(D) Remedies**

> (1) When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney … may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated.

Pa.R.Crim.P. 600.

The trial court addressed Appellant's Rule 600 issue in the opinion dated February 18, 2025. Therein, the court explained that Appellant's counsel filed two separate motions to dismiss pursuant to Rule 600, and the court conducted hearings on each motion. At the April 26, 2024 hearing, the parties agreed that the "mechanical run date" in this case was October 1, 2022. TCO at 7, citing N.T. 4/26/24 at 6. The trial court continued:

> The defense agreed that a total of 258 days were excludable due to delays caused by defense requests for continuances.[5] This resulted in an "adjusted run date" of June 16, 2023. However, the docket entries in this case show that the Commonwealth did not cause any of the delays that resulted in the trial taking place past the adjusted run date. The first scheduled jury trial date of March 6, 2023, was continued to March 7, 2023, based on a defense request to enter into a non-trial disposition. When the non-trial disposition did not go forward on March 7, 2023, the docket entry for that date shows that the defense requested another continuance and that the Commonwealth was ready to proceed to trial. On March 23, 2023, the [c]ourt scheduled a new jury trial date of August 14, 2023. However, on August 11, 2023, defendant made a motion for new counsel, which the [c]ourt

---

[5] Appellant ignores any agreements made by defense counsel, merely asserting in his brief that there were zero proper exclusions of time from the Rule 600 calculations.

granted, and the jury trial date was continued again to provide new counsel an opportunity to prepare for trial. On October 19, 2023, the [c]ourt scheduled a new jury trial date of April 22, 2024. However, the docket shows that the trial date was continued again on April 22, 2024, because defense counsel was unavailable. On April 26, 2024, the [c]ourt scheduled the final jury trial date of August 20, 2024. In short, the docket shows that the Commonwealth did not cause any of the delays in this case. As the [c]ourt noted at the motion hearing, a substantial part of the delay resulted from the [c]ourt's transition to a new case calendaring system after the period of the COVID pandemic.

In his statement of errors, [Appellant] fails to state with any specificity how the [c]ourt miscalculated the time in this case or which particular calculation or exclusion of time was erroneous. In any event, the record shows that the [c]ourt correctly calculated the mechanical and adjusted run dates and properly concluded that the Commonwealth had not caused any delays.

Moreover, the record shows that the [c]ourt correctly rejected defendant's claims that the Commonwealth failed to exercise due diligence. No evidence in the record supports [Appellant's] claim that the Commonwealth failed to act with due diligence in providing the defense with any discovery materials, including the internal affairs report referenced [above.]

TCO at 7-8 (internal citations omitted).

Appellant's brief fails to note which continuances were asked for by defense counsel, which would not be included in Rule 600 calculations. He further fails to explain what calculations made by the trial court were erroneous. Appellant has further failed to specify how the Commonwealth failed to proceed with due diligence. There was no Rule 600 violation here.

*Errors in admitting and relying on inconsistent probable cause affidavits*

In his final issue on appeal, Appellant seems to maintain that there was an error in listing the date of the incident involved here in some pretrial documents, and this error mandates our finding that the arrest warrant in his

case was infirm. He argues that an internal affairs document lists the incident as occurring on January 1, 2021, and a handwritten statement log[6] lists the incident date of 5/12/2021. Appellant's brief at unnumbered 14. The criminal complaint lists an offense date of January 20, 2021, as does the criminal information. I.R. testified at trial that the incident in question here occurred on January 20, 2021. N.T. Vol. 1, 8/21/24 at 60.

Under Rule 109 of the Pennsylvania Rules of Criminal Procedure, a "defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a … warrant … unless the defendant raises the defect before … the conclusion of the preliminary hearing in a court case, and the defect is prejudicial to the rights of the defendant." Pa.R.Crim.P. 109. **See also Commonwealth v. Snyder**, 560 A.2d 165, 172 (Pa. Super. 1989) (holding, under a prior version of Rule 109, that the appellant's failure to raise a defect before the end of the preliminary hearing generally results in waiver). There is no indication that Appellant raised his claim of a defect prior to the end of the preliminary hearing in this case.

Moreover, Appellant did not preserve this claim by including it in any filed pre-trial motion to suppress. Appellant's counsel filed a motion in limine on February 20, 2023, but there is no mention therein of any discrepancy in the incident date. Appellant also filed a *pro se* motion on July 20, 2024, but

_____

[6] This appears to be a reference to a document obtained by Appellant in discovery.

this motion also fails to mention any discrepancy in an incident date. The issue has been waived.

Moreover, even if the issue had not been waived, it would not entitle Appellant to any relief. Generally speaking, certain pre-trial irregularities will not invalidate an otherwise lawful conviction. Our Supreme Court has found that any issue related to a defect in an affidavit of probable cause "becomes moot upon the district justice's finding at the preliminary hearing that a *prima facie* case has been established." **Commonwealth v. Evans**, 303 A.3d 175, 185 (Pa. Super. 2023). **See also Commonwealth v. Meyerle**, 293 A.3d 607, 608 (Pa. Super. 2023) (noting that, once a defendant has gone to trial and has been convicted of the crimes charged, any defect in the preliminary hearing asserted on appeal is rendered immaterial). After Appellant's conviction following his jury trial, any minor defects in the date listed in the affidavit attached to his arrest warrant are immaterial and would not result in his obtaining a new trial. Moreover, Appellant has failed to assert, let alone demonstrate, any resulting prejudice from this alleged defect. Thus, no relief would be due.

Finding no merit to any of Appellant's issues on appeal, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/28/2026